MARY L. MOSELEY *v.* LIVERPOOL & LONDON GLOBE
INSURANCE COMPANY.

[61 South. 428.]

1. INSURANCE. *Reinsurance. Nature of contract. Rights of policy holder.*

   Contracts of reinsurance are contracts of indemnity of the insurer and there is no privity between the insured and the reinsuring company.

2. Same.

> The contract set out in the opinion of the court in this case *held* to be a contract or reinsurance and does not entitle the insured to recover of the reinsuring company, there being no privity of contract between them.

Appeal from the chancery court of Yazoo county.

Hon. G. G. Lyell, Chancellor.

Suit by Mrs. Mary L. Moseley against the Liverpool & London & Globe Insurance Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Campbell & Campbell* and *E. L. Brown*, for appellant.

Other than the question of amount to be recovered, the sole question argued at the bar on the hearing of the demurrer to the amended bill was the right of the appellant to recover of the appellee, it being conceded on both sides that if appellee be held, under its contract with the Mississippi Home Insurance Company, to be merely liable to that company to indemnify it against any loss it might sustain, as against appellant, there was no liability to the appellant on the part of appellee.

The position of the appellant was that the so-called contract of reinsurance, between appellee and the Mississippi Home, was not one of reinsurance, that is, a contract to indemnify the latter company against loss to appellant under its policy in her favor, but that the so-called reinsurance contract was an obligation, on the part of the appellee to pay its *pro rata* of the loss which might be sustained by appellant and against which the Mississippi Home has insured her. In other words, the appellee agreed to pay its *pro rata* of any loss that appellant might sustain, and not to indemnify the Mississippi Home for a *pro rata* of any sum it might have to pay appellant on account of such loss.

We think it will be conceded that, if our construction of the contract is correct, that is, that it is an obligation to

pay a *pro rata* of the loss, as distinguished from an obligation to indemnify the Mississippi Home for a *pro rata* of such sum as it might have to pay appellant, the appellant was entitled to recover. We think all of the authorities so hold .

The question is analogous to the one presented in *Pool* v. *Doster*, 59 Miss. 258, and the authorities there cited, but we have no direct adjudication of this court on the point. It is there held that, if a debtor give a security to his surety as an indemnity against his liability as surety, the creditor may not have recourse to the security given; but that, if the debtor give the surety a security for the payment of the debt, the creditor may have the benefit of the security, even though he be not a party to, or know of, the contract creating the security. By parity of reasoning, it may be held that, if the pretended reinsurer obligate to pay the loss, or a *pro rata* thereof, such obligation is available directly by the assured. There is no question of subrogation in either case. That takes place in favor of the surety, and makes a security, contracted for by the creditor, available to the surety, because the security is one for the payment of the debt. The two propositions are entirely in harmony, in that both rest upon the fact that the security contract secures the payment of the debt, and are analogous in that, in the one case the creditor, though getting the benefit thereof, is not a party to the security contract, and in the other, the surety, though not a party thereto, gets the benefit thereof.

Another familiar principle upon which our contention rests is this: If A, on receipt of a sufficient consideration, agrees with B to pay a debt by the latter to C, then C may enforce the promise in a suit directly against A, though C was not privy to the contract between A and B and no consideration moved from C to A. *Shoaf* v. *Palatine Ins. Co.*, 80 A. S. R. 804.

This seems to be the usual ground upon which the so-called reinsurer is held liable in a suit by the assured.

Still another principle upon which the contention rests is that of avoiding circuity of action, under equitable doctrines, an instance of which is *Hunt* v. *Ins. Co.,* 38 L. R. A. 514. If this doctrine be not also available at law, we are in equity here, and it is available to us.

Whether one basis of the doctrine or another be maintained, "there is no doubt that a policyholder may sue the reinsurer, in case of loss, upon a contract of reinsurance, which includes a promise or agreement on the part of the reinsurer to assume and pay the losses of the policyholders." Freeman's Note 45 A. S. A. 447:

The only question, then, is, does the contract between the appellee and the Mississippi Home contain a promise or agreement to pay the loss, or some part thereof, sustained by the appellant? We think it unquestionably does.

*Hirsch, Dent & Landau* and *McLaurin, Armistead & Brien,* for appellee.

Whether this is a contract of copartnership, or of principal and agency, or of a new-fangled principle of reinsurance, is a question gravely submitted to this court to decide. Contracts of reinsurance have been in existence for some two centuries and have been construed time and time again by the courts.

As stated by the Supreme Court of the United States with reference to the contention, made in that case: "We do not think that the language of these two subdivisions was intended to entirely nullify and tear up by the roots the construction given to the contract of reinsurance for so many years throughout the civilized world, and upon which its chief value is based. The nature of the contract is accurately described in its commencement. It is described as 'a compact of reinsurance' and there has been no doubt as to the meaning of such contract for the last two centuries." *Allemannia Fire Ins. Co.* v. *Fireman's Fire Ins. Co.,* 209 U. S. 326-337.

In view of the strenuous efforts of appellant to induce this court to impart a new meaning to "a contract of reinsurance," we trust we will be pardoned when we cite at some length from the textbooks and the leading cases.

In the case of *Allison* v. *Fidelity Mutual Fire Insurance Company,* decided by the supreme court of Nebraska, April 3, 1908, 116 N. W. 274-275, the supreme court held:

"At this point it seems proper to consider the nature of a contract of reinsurance. In *Barnes* v. *Hekla Fire Ins. Co.,* 56 *Miss.* — —, 57 N. W. 314, 45 Am. St. Rep. 438, it was said 'Reinsurance is a contract of indemnity in which the insurer reinsures risks in another company, and is solely for the benefit of the latter, and not of the policyholders.' In *Hunt* v. *New Hamshire F. U. A.,* 68 N. H. 305, 38 Atl. 145, 38 L. R. A. 514, 73 Am. St. Rep. 602, it is said: 'By a contract of reinsurance, in whatever language expressed, the obligation of the reinsurer is to indemnify the insured against his liability for the loss by fire of the property insured. They stand in a relation to each other much like that of principal and surety. The only material difference is that the reinsurer is not in law directly liable to the insured.' In the case of *Appeal of Goodrich,* 109 Pa. 523, 2 Atl. 209, it is said: 'Reinsurance is properly applied to an insurance affected by one underwriter with another, the latter wholly or partially indemnifying the former against the risks which he has assumed; that is to say, after an insurance has been effected, the insurer may have the subject of insurance reinsured to him by some other.' It is apparent therefore, that the contract of reinsurance is not to insure the owner of the property against its loss by fire, or other casualty, but is a contract to indemnify another insurance company or underwriter. Strictly speaking, it is purely a contract of indemnity, not against fire or other hazard provided in the original policy, but against loss by or on account of the outstanding contract of insurance with the owner of the property. A contract of reinsurance is simply to in-

demnify the original insurer for a loss he may sustain upon his contract of insurance.''

"A contract of reinsurance—as usually used—designates a new contract by which a company secures partial or entire indemnity for losses which it may suffer under risks which it continues to carry.'' 19 Cyc. 638.

Mr. Cooley in his Briefs on Insurance, vol. 4, p. 3942, says:

"The ordinary contract of reinsurance is only between the original insurer and the reinsured.''

The author of the Am. & Eng. Ency. of Law, vol. 24, pages 248-9 says: "Nature of Reinsurance—A Contract of Indemnity. Although in a certain sense reinsurance may be an insurance upon property, it is really a contract of indemnity against risk incurred in the original insurance.''

It is equally well settled that in a contract of reinsurance a policyholder has no right of action against the reinsured.

"The original insured has no such interest as will entitle him to proceed directly against the reinsurer.'' *Strong* v. *Phoenix Ins. Co.,* 62 Mo. 289, 21 Am. Rep. 417; *Carringtan* v. *Commercial Fire & Marine Ins. Co.,* 14 N. Y. Super Ct. 152; *Delaware Ins. Co.* v. *Quaker City Ins.,* 3 Grant Cas. (Pa.) 71.

"The theory of reinsurance is that, when reinsurance is made, it should be made in the name and for the benefit of the company, and not of the individual policyholder.'' *Casserly* v. *Manners,* 48 How. Prac. (N. Y.) 219. Consequently the contract of reinsurance inures to the benefit of all creditors of the original insurer, and the policyholder has no equitable lien on the proceeds. *Herckenrath* v. *American Mut. Ins. Co.,* 3 Barb. Ch. (N. Y.) 63; *Blackstone* v. *Allemannia Fire Ins. Co.,* 56 N. Y. 104; *Consolidated Real Estate & Fire Ins. Co. of Baltimore* v. *Cashor,* 41 Md. 59; *Appeal of Goodrich,* 109 Pa. 523, 2 Atl. 209.

Cooley's Briefs on Insurance, vol. 4, p. 3942. "There is no privity between the original policyholder and the re-

assuring company." *Consolidated Real Estate Co.* v. *Cashow, supra; Strong* v. *Phoenix Ins. Co.,* 62 Mo. 289, 21 Am. St. Rep. 417, and many other cases cited on p. 640 of Cyc." 19 Cyc. 640.

"A reinsurance contract is a contract of indemnity to the company reinsured only. The reinsured sustains as to the reinsurer the same relation which the original insured bears to the reinsured. The contract of reinsurance does not inure to the benefit of the insured; he has no claim, legal or equitable, against the reinsurer." Joyce on Insurance, sec. 117.

"No Privity of Contract between Original Insured and Reinsurer—Exception. There is no privity of contract between the reinsuring company and the insured in the original policy, and hence in the absence of express terms in the reinsurance contract such original insured cannot maintain any action on the reinsured contract; when the reinsurance contract in terms assumes or agrees to pay the original insured, the latter may maintain suit thereon; when policy is issued directly to the original insured it cannot be claimed to be a reinsurance contract." Clement on Fire Ins., vol. 2, p. 457.

"Creates no Privity between Reinsurer and Party Originally Insured. The ordinary contract of reinsurance operates solely between the insurer and the reinsurer and creates no privity whatever between the reinsurer and the person originally insured; the contract of insuance and that of reinsurance remain totally distinct and unconnected, and the reinsurer is in no respect liable, either as surety or otherwise, to the person originally insured." 24 Am. & Eng. Ency. of Law, pp. 248, 249.

Appellant cited the note of Mr. Freeman to *Barnes* v. *Hekla Fire Ins. Co.,* 56 Minn. 38, 45 Am. St. Rep. 438-447. It appears by a mere examination of that case that the supreme court of Minnesota held: "Reinsurance is a mere contract of indemnity in which the insurer reinsures risks in another company, and is solely for the benefit of

the insurer, and not of the policyholders, who have no interest therein and cannot sue thereon.''

·What Mr. Freeman really does say is, that a policyholder may sue the reinsurer when the contract of reinsurance ''includes a promise or agreement on the part of the reinsurance.'' Thus guided by a principle of law that nobody questions, the appellant leads a forlorn hope in seeking to show by argument, and not by the language actually employed, that this contract contains a promise or agreement to assume and pay the losses of the policyholder. We respectfully submit that the appellant can find no words in this contract which impliedly or expressly promises or assumes to pay the losses of the policyholder, and that it is a contract which on its face purports to be a contract of reinsurance with the Mississippi Home insurance Co.

In a note to the *Traders Ins. Co.* v. *Aachen & M. F. Ins. Co.,* pp. 844-862, 8 L. R. A. (N. S.) — —, the author says: ''In a contract of straight reinsurance the reinsurer is liable only to the reinsured, as there is no privity between the original assured and the reinsurer. *Strong* v. *Phoenix Ins. Co.,* 62, Mo. 289, 21 Am. Rep. 417, and other cases. So in *Carrington* v. *Commercial F. & M. Ins. Co.,* 1 Bosw. · 152, it was held that a reinsurer was not liable to the original insured on the policy of reinsurance, notwithstanding the insurer had failed before the loss occurred.

''And, as in the case of liability to associations generally where an asociation of individual underwriters under the name of Individual Underwriters at Commercial Lloyds is reinsured, the reinsurer is not liable to an individual member of the association for his proportionate part of the loss. *Thompson* v. *Colonial Assur. Co.,* 60 App. Div. 325, 70 N. Y. Supp. 85.''

We could extend this brief by adding other citations, but will not trespass longer upon the patience of this court.

COOK, J., delivered the opinion of the court.

The Liverpool & London & Globe Insurance Company and the Mississippi Home Insurance Company, both engaged in the insurance of property against loss by fire, in June, 1905, entered into the following contract and agreement:

"Agreement of reinsurance this day entered into between the Mississippi Home Insurance Company, of Vicksburg, Miss., which shall herafter be known as the party of the first part, and the Liverpool & London & Globe Insurance Company, of England, which shall hereafter be known as the party of the second part, upon such property, for such periods, for such rates of premiums, and at such locations in the states of Mississippi and Louisiana as may be more specifically described in the daily reports which are to be furnished the party of the second part by the party of the first part: It is understood and agreed that all risks declared under this agreement of reinsurance shall attach and become binding upon the party of the second part at and from the time of the issuance of the policy of the party of the first part by their representatives. Such liability, however, shall be governed by the memorandum of net rentations of the party of the first part, and the maximum amount of cessions to be made by the party of the second part as follows:

"No. 2. Memo. of net retentions of the Mississippi Home Insurance Co. and maximum amount of cessions to be made the Liverpool & London & Globe Ins. Co.:

| Mississippi Home's Retension. | | L. & L. & G. Acceptance. |
|---|---|---|
| $1,500 00 | Dwelling ....................... | $5,000 00 |
| | Brick store building ............ | 5,000 00 |
| | Brick ........... ............. | 5,000 00 |
| | Frame store and stocks (isolated) | 2,500 00 |
| | Frame store and stocks (in range) | 2,500 00 |
| | Gins, system ................... | 5,000 00 |

To be a system gin, the same
must be equipped with condensors,
feeders, blowers, suction elevator,
double box revolving press, and
flint flues.

Gins, not system ................   2,000 00
   This latter class to embrace all
gins which do not qualify as sys-
tem gins, as above defined.

Oil mills .......................   2,500 00

Saw mills ......................    2,500 00
   Saw mills which are acceptable
under this agreement must con-
sist of a reasonable protection ac-
ceptable to the L. & L. & G. Ins.
Co.

Cotton in press, warehouses or
   yards ............... ..........   2,500 00
   This latter is not to embrace
cotton on yards within 150 feet of
a gin.

"For all classes of business not included in the above,
the L. & L. & G. Ins. Co. The limits of acceptance and
cessions to and by the L. & L. & G. Ins. Co. may be
modified by mutual agreement in record form at any
time.

"Daily reports of cessions to be mailed the party of
the second part not later than the succeding business day
after the receipt of report at the office of the party of the
first part. All such cessions will be considered accepted
by the party of the second part, unless notice of rejection
is immediately mailed or telegraphed by the party of the
second part to the party of the first part on the day of the
receipt of report of cessions by the party of the second
part and it is agreed that the party of the second part will
not cancel any risk after acceptance unless for reasons
satisfactory to both parties to the contract.

"When any policy of the party of the first part is rein-sured by the party of the second part, and such policy is renewed by the agent of the party of the first part, such reinsurance shall be automatically renewed for account of the party of the second part in keeping with the net retentions, and memorandum of acceptance above enumerated.

"The party of the second part agrees to a *pro rata* share of all expenses, legal and otherwise, incurred in the adjusting or resisting of any claim upon the party of the first part under policies reinsured by this agreement. The said cessions shall be subject to the same risk, conditions, valuations, and mode of settlement, indorsements, and assignments as may be assumed or adopted by the party of the first part. Loss, if any, payable *pro rata* at the same time and in the same manner as if effected by the party of the first part.

"The party of the first part is to apprise the party of the second part of cessions by daily reports, being copies of the originals received from their representatives. All notices or indorsements or cancellations are to be promptly supplied to the party of the second part on blanks provided for that purpose. All settlements for premiums on cessions to be made in New York or New Orleans exchange within thirty days after the conclusion of the month. The rate of commission to be allowed the party of the first part to be twenty-five per cent upon the net balance of each month.

"This agreement to take effect immediately on signature, and is concluded for an unlimited time; but it can be canceled by giving written notice thereof, the cancellation to take effect thirty days after receiving such notice, but not to affect current liabilities of the party of the first part to the party of the second part, which are to be liquidated in the ordinary way after such notice has been given."

In February, 1906, the Home Insurance Company issued its policy to appellant for two thousand and five

hundred dollars, and ceded one thousand dollars thereof to appellee, which was accepted by it. The property insured was destroyed by fire, and this suit was brought by the holder of the policy against appellee, and is based upon the above contract.

It is the contention of appellant that the contract between appellee and the Home Insurance Company was not one of reinsurance, that is, a contract to indemnify the latter company against loss to appellant under its policy in her favor, but that the so-called insurance contract was an obligation on the part of appellee to pay its *pro rata* of any loss which might be sustained by appellant, and against which the Mississippi Home Insurance Company has insured her. In other words, appellee agreed to pay its *pro rata* of any loss that appellant might sustain, and not to indemnify the Mississippi Home Insurance Company for the *pro rata* of any sum it might have to pay appellant on account of such loss.

It is the position of appellee that the contract is an ordinary contract for reinsurance to indemnify the insurer and not the insured against loss. It seems to be the theory of appellant that the fact that the contract was a contract antecedent to the issuance of the policies upon risks to be indemnified by appellee and that it agreed to pay its *pro rata* share of the expense of adjusting claims of loss and that it was to settle with the insured in the same manner and to the same extent as the insurer was bound by its policy to settle with the insured, constitutes this agreement either a partnership between the two insurance companies, or that the insuring company was the agent of appellee in securing the insurance for it, or that the agreement to take over insurance thereafter to be written was an assumption of the payment to policyholders of all losses which resulted to the policyholders, and not simply to pay to the insurer the amount which the insuring company was obliged to pay to its policyholders.

It is settled beyond all peradventure that contracts of reinsurance are contracts of indemnity of the insurer, and that there is no privity between the insured and the reinsuring company. This is so well settled that it is unnecessary to cite authority in support of it. Indeed, appellant recognizes this to be the true rule, but insists that the contract here involved was not a contract of reinsurance. We have stated the positions of the parties to this controversy, and copied into this opinion the contract involved. Exclusive of mere detail the contract means that the reinsurer in consideration of seventy-five per cent of the premiums received by the insurer, obligates itself to pay to the insurer its contractual proportion of the losses upon the risk assumed by the insurer. This is the well-understood and long-established contract of reinsurance. The details do not change, or in any way affect, the obligations of the reinsurer. The measure of the reinsurer's obligation to the insurer is the obligation of the insurer to the insured, to be determined by the terms of the policy of insurance issued to the insured. In other words, the reinsurer undertakes to indemnify the insurer upon a certain proportion of its legally ascertained losses.

The details of report, cession, and settlement between the insurer and this company amount to no more than a scheme or plan whereby (a) the time when the liability of this company to the insured began; (b) the option of this company, after notice, to reject risks, and cancel its liability attaching at the time the original policy was written; (c) that no accepted risk can be canceled, except upon terms agreeable to both parties. This, it seems to us, constitutes an agreement of reinsurance, and does not amount to a taking over of the business of the Mississippi Home Company. The words "cede" and "cession," occurring in the contract, evidently mean the apportionment of fixation of the amount of reinsurance to be accepted by the reinsurer, and do not mean a trans-

ference of the risk to the reinsurer, in the sense that the insurer divests itslf of the risk and burdens the reinsurer with same.

The question here involved is fully discussed, and all of the authorities upon every phase of the case are cited, by Mr. Freeman in his note to *Barnes v. Hekla Fire Insurance Co.,* reported in 45 Am. St. Rep. 438.

*Affirmed.*