2 So.2d 407
**FARISH, Superintendent of Banks, v.
HAWK et al.**

1 Div. 142.

Supreme Court of Alabama.

May 15, 1941.

Rehearing Denied June 5, 1941.

Adams & Gillmore, of Grove Hill, for appellant.

J. Woodrow Gilmore and Paul S. Jones, both of Grove Hill, for appellees.

354

**FOSTER, Justice.**

The question in this case is whether a certain mortgage executed by appellees (husband and wife) to the Bank of Grove Hill is to any extent enforceable. Appellant, as Superintendent of Banks, has it in charge, and is liquidating the affairs of that bank. Appellees filed a bill in equity to enjoin a foreclosure of the mortgage because it was paid in full with the benefit of a set-off, and void as to the wife's land. There is no question raised as to its equity.

The lands described in the mortgage are separately owned by the mortgagors. The wife claims that it is invalid as to her and her lands because she claims the debt is solely that of her husband. The court so found and decreed. The husband claims that he is entitled to a credit for the value of some cotton paid on it, and to set off the amount of a savings account on deposit. The evidence was taken orally before the trial judge, except the deposition of one witness. The court found with him as to this credit, and recognizing the rule which applies on review under such circumstances appellant does not insist upon reversible error in that respect. This left a balance of the principal sum of $250 due on the mortgage.

The court further found and decreed that prior to the bank holiday, made for certain purposes by executive proclamation, on the first day of March, 1933, Mrs. Fannie White, the mother of appellee F. G. Hawk,

had on savings account in the bank a deposit of $1,113.79, as evidenced by a pass-book with the usual stipulations, making the account withdrawable only on presentation of the book, etc., that on or about April 2, 1932, she turned over and delivered to him said pass book, and it became his property, which was prior to the proclamation of the bank holiday, and that he was entitled to apply an amount of it to his debt to the bank sufficient to satisfy the same entirely. The amount of this deposit was more than enough to pay his debt. It was therefore decreed that the debt was fully paid, and that appellant be restrained and enjoined from foreclosing said mortgage.

It is apparent that this decree was well founded if F. G. Hawk was entitled to have his mortgage debt credited with said amount of the savings account, regardless of whether his wife may or may not have also been liable. Its payment fully discharges the entire obligation.

But appellant claims that unless the mortgage debt was that solely of Hawk, he is not entitled to this set-off under the authority of First National Bank v. Capps, 208 Ala. 207, 94 So. 109, 111.

That principle is however limited to partnership debts or others which are joint and not several, and are not made several by the statute. If the debt here was that of both husband and wife, individually (not a partnership), it was several as well as joint under the statute, and the deposit was subject to set-off if otherwise available. Section 5719, Code, Code 1940, Tit. 7, § 138; Gilliland v. Order of Railway Conductors, 216 Ala. 13, 112 So. 225; Depoyster Lumber Co. v. Commercial Lumber Co., 213 Ala. 327, 104 So. 798; Craft v. Craft, 209 Ala. 226, 95 So. 901; Sledge v. Swift, 53 Ala. 110.

When a mortgagor seeks to redeem property in a mortgage, by a bill in equity, he can get the benefit of any demand as a set-off which he would have had if he had been sued at law on the debt. Conner v. Smith, 88 Ala. 300, 7 So. 150; Fortson v. Bishop, 204 Ala. 524, 86 So. 399. And when the mortgagee is insolvent, as here, this right of set-off is alone sufficient to support a resort to equity to enjoin foreclosure. Samuels v. Scott, 212 Ala. 679, 103 So. 848; Caldwell v. Caldwell, 166 Ala. 406, 52 So. 323, 139 Am.St.Rep. 48.

The legal principle on which Hawk claims the credit is not controverted

by appellant. It is stated as follows in Oates v. Smith, 176 Ala. 39, 57 So. 438, 440:

"It is universally conceded that the changed status wrought by insolvency, or by the appointment of the receiver, does not impair then existing rights of set-off in favor of debtors. See note to St. Paul Trust Co. v. Leck (Minn.) 47 Am.St.Rep. 585; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; 34 Cyc. 194.

"But it is held with equal unanimity that such debtors are not entitled to have set off against their debts claims which they have acquired subsequent to such insolvency, of which they have notice, or subsequent to the appointment of the receiver. * * *

"(1) The receiver succeeds to the assets as they are, and subject to every specific right and equity which existed against the insolvent; and, where a set-off exists, the debtor equitably owes only the balance over and above the amount of his counterclaim, and this is the debt that passes to the receiver; and (2) the impartial distribution of the assets, which constitute a trust fund in equity, without any preference of one creditor at the expense of others, would be palpably defeated. After insolvency is established, a creditor's claim, so far as the assets are concerned, gives him no more than the right to file his claim seasonably and to share ratably in their distribution. And when he assigns his claim to another, after such insolvency is established, the assignee acquires no other nor higher right than had his assignor." 9 Corpus Juris Secundum, Banks and Banking, page 994, § 517, page 995, § 520; 7 Am.Jur. 341. See, also, Woodlawn Fed. Sav. & Loan Ass'n v. Williams, 237 Ala. 446, 187 So. 177, decided on a different point.

This principle applies to savings accounts in a commercial bank. 7 Am.Jur. 343, § 478.

After the order made by the Governor on March 1, 1933, the Bank of Grove Hill was not permitted to transact certain forms of business. See Act of March 9, 1933, General Acts 1933, Ex. Sess. page 39, Code 1940, Tit. 5, §§ 1, 99–117, and the Act of March 16, 1933, General Acts 1933, Ex. Sess. page 71, Code 1940, Tit. 5, §§ 200–204. But it stayed open for certain purposes, and was taken over for liquidation by the su-perintendent of banks on June 16, 1933. In the meantime, the officers of the bank were in charge of its affairs for all proper purposes.

The substantial question of fact tried before the judge was whether the savings account pass-book and the deposit account represented by it were given by Mrs. Fannie White to F. G. Hawk before the insolvency of the bank of which Hawk had notice. There is no contention but that the gift or delivery of the bank book with the intention of transferring the account was effective for the purposes of this controversy, if it occurred in April, 1932. See, Jones v. Weakley, 99 Ala. 441, 12 So. 420, 19 L.R.A. 700, 42 Am.St.Rep. 84; Goodson v. Liles, 209 Ala. 335, 96 So. 262; Herring v. Elliott, 218 Ala. 203, 118 So. 391; Smith v. Eshelman, 235 Ala. 588, 180 So. 313.

It is also true that the controversy does not hinge on the status of the bank in this respect between the first of March and the 16th of June, 1933. If there was an assignment of the bank account to Hawk at all, it occurred in April, 1932, as found by the trial judge.

Appellant in brief observes that the error which she will assign with respect to this phase of complainants' case is in the admission of certain testimony as follows: Mr. Tucker, cashier of the bank until it was taken over for liquidation, testified that during the "holiday," meaning after the general emergency proclamation of March 1st, and before June 16, 1933, which the witnesses also call the "moratorium," Mr. Hawk came in the bank and said to him that the account had been given him and he had already drawn $100 (which is shown to have been in April 1932), and had told Mr. Pugh (assistant cashier of the bank) he wanted it transferred. Witness would not do this as he told Hawk and said that so many things have happened, and he did not want to go to the penitentiary. He was then asked by complainants' counsel whether he and Mr. Pugh had discussed the question of the gift of this savings account to Mr. Hawk, and whether Mr. Pugh told him that Mr. Hawk claimed this savings deposit as a gift prior to the holidays. He answered that he did so. Objection was duly made, and the court overruled it and admitted this evidence. Appellant complains of this ruling as reversible error. Counsel insist that when in an equity trial the court overrules

objection to illegal evidence, it shows that he considered illegal evidence, and therefore the presumption that he only considered legal evidence under the rule of section 6565, Code, does not apply. This is a theory which has been approved by this Court. Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12; Schwab v. Powers, 228 Ala. 205, 153 So. 423; Richardson v. Dean, 237 Ala. 421, 187 So. 176.

True, the issues in this case are not directly controlled by the date when Hawk gave notice to the bank of his claim of this account, or what he said in doing so. But the fact of such notice of his claim of ownership, and what he said in that connection, are material as a step in the progress of his effort to secure its benefits. 9 Corpus Juris Secundum, Banks and Banking, § 517, page 994, note 27. The statements of Pugh, the assistant cashier to Tucker (the cashier), in the performance of their respective duties before the bank was taken over for liquidation are not governed by the rules of hearsay evidence in its ordinary application. They were acting in the scope of their employment and were talking to each other about matters which were under their direction and subject to their attention. Pugh's statement to Tucker is an admission that the bank through him as its assistant cashier had notice that Hawk claimed that he acquired this account prior to the "holidays," and the statement was made by Pugh in the scope of his employment, and while he was engaged in the business of his principal, as the court had the right to find from all the circumstances. When so, such evidence is admissible. 9 Ala.Dig. 211, Evidence, ☞241(1).

The finding by the court that the book representing the savings account and the account itself were given by Mrs. Fannie White to her son F. G. Hawk in April, 1932, is supported by the testimony without substantial conflict. There were some discrepancies as to detail, justifying different inferences. But the finding was as the verdict of a jury. There is no substantial basis on which it should be disturbed.

The result is that the allowance of the set-off was fully supported by the law and facts, and it is not dependent upon whether the debt was that solely of Hawk, or was that of them both. We need not therefore consider the separate phase of the controversy relating to the claim of Mrs. Hawk that she was not personally bound, nor was her land.

Affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.