105 So.2d 43

**MELCO SYSTEM et al.**

v.

**RECEIVERS OF TRANS–AMERICA INS. CO.**

**Granville TURNER**

v.

**RECEIVERS OF TRANS–AMERICA INS. CO.**

**EMPLOYERS REINSURANCE CORP.**

v.

**RECEIVERS OF TRANS–AMERICA INS. CO.**

3 Div. 790, 791, 789.

Supreme Court of Alabama.

March 20, 1958.

Rehearing Denied June 12, 1958.

Further Rehearing Denied Sept. 25, 1958.

[1]  267 Ala. 458.

154

Pritchard, McCall & Jones and Victor H. Smith, Birmingham, for Melco System and Seven-Up Bottling Co.

Frank Tipler, Jr., Andalusia, and Godbold, Hobbs & Copeland, Montgomery, for Granville Turner.

Rushton, Stakely & Johnston and Jas. Garrett, Montgomery, for appellee receivers.

John R. Matthews, Jr., and Fred S. Ball, Jr., Montgomery, for Employers Reinsurance Corp.

3 Div. 790

Melco System and Seven-Up Bottling Company of Birmingham, Incorporated, a Corporation, et al.

v.

Receivers of Trans-America Insurance Company, a Corporation

MERRILL, Justice.

The receivers of Trans-America Ins. Co., Inc., an insolvent domestic casualty insurance company, filed a petition in the Circuit Court of Montgomery County, In Equity, showing that Trans-America was the defendant in many law suits, and that Trans-America had a reinsurance treaty with Employers Reinsurance Corp. of Kansas City, Missouri, whereby Employers agreed to assume all liability for judgments against Trans-America in excess of $10,000. The petition further showed that Employers, while denying liability, had agreed to compromise the claims of Trans-America by paying $130,000 to the receivers, provided that this amount settled all claims against Employers by Trans-America, its receivers or any other persons, arising out of the reinsurance contract. The petition further alleged that the receivers felt it was to the best interest of the receivership and all the creditors that the offer be accepted, and asked the court to construe the reinsurance contract and ascertain if the settlement could be accepted by the receivers. The petition requested the court to select one or more creditors of Trans-America from the thousands located over the United States, and to permit the one selected to represent all the creditors of their particular class. Several creditors were named and notified but the only ones contesting are appellant, Melco System, to whom Trans-America had issued an automobile liability insurance policy under which appellant, Seven-Up Bottling Co. was also covered, and Granville Turner.

The lower court approved the compromise. The three appeals here considered were consolidated in one record.

The Melco System is in the automobile leasing business and leased a vehicle to Seven-Up Bottling Co. This vehicle was involved in a collision whereby one Mrs. Mooreland was injured, and she sued for $150,000. Her case was pending when the decree in the instant case was rendered. Trans-America had insured Melco and its lessee, Seven-Up, for $100,000 and reinsured with Employers for all liability over $10,000.

Melco, by special appearance, objected to the acceptance of the $130,000 offer. Melco contended that it had a right to proceed against Employers and that the receivers had no right to compromise its claim against Employers. After a hearing and testimony, the court held that it was to the best interest of the receivership to accept the compromise offer of $130,000; that this amount would be settlement in full of all claims, including that of Melco, and that the sum, when received by the receivers, should be general funds of the receivership. Melco argues that the evidence is insufficient to support a finding that the compromise should be accepted; that the insolvency agreement keeps the reinsurance agreement from being an "ordinary" one, and that Melco is a third party beneficiary to the contract.

It seems to be agreed by all concerned that the reinsurance treaty alone would not permit any of the appellants to recover, because Employers did not become liable until Trans-America had paid a loss in full. It also seems to be agreed that the reinsurance treaty and the insolvency agreement must be construed together because they were executed on the same day and refer to the same matters. The insolvency agreement reads, in part, as follows:

"In consideration of the continuing and reciprocal benefits to accrue to the assuming insurer, the assuming insurer hereby agrees that, as to all reinsurance made, ceded, renewed or otherwise becoming effective after the effective date, the reinsurance shall be payable by the assuming insurer on the basis of the liability of the ceding insurer under the contract or contracts reinsured, without diminution because of the involvency of the ceding insurer, directly to the ceding insurer or its liquidator, receiver or other statutory successor, * * *"

The trial court followed cases which hold that ordinarily a contract of reinsurance is one of indemnity to the reinsured, and that a reinsurer is under no contract obligation to the original insured and does not become liable to him.

Melco agrees that there is no liability on Employers if the recovery be less than $10,000. In that event, Melco would be in the same position as some twenty-five hundred other creditors, but Melco insists that as far as the excess of $10,000, it should have a preferred position and not be left with its claim as a general creditor. Melco also urges that the court erred in holding immaterial the following rider about reinsurance on the policy:

"It is understood and agreed that Trans-America Ins. Co. has reinsured the excess of $10,000 bodily injury or property damage liability, or any combination of the two, under this policy with Employers Reinsurance Co. of Kansas City, Missouri. Any change in the reinsurance contract affecting this policy will be reported to Melco System, Inc. immediately."

Melco does not claim that this endorsement created any privity between Melco and Employers but, since Trans-America issued the policy with that endorsement and collected the premiums for Trans-America or its estate, it is not entitled to be enriched at the expense of Melco. The appellees insist that the evidence justifies the finding of the trial court and that there can be no privity between Melco and Employers.

The basic questions presented are:

(1) Is Trans-America, or third parties under insurance policies issued by it, entitled to the proceeds of the reinsurance contract;

(2) If Trans-America is entitled to the proceeds, are they general assets;

(3) If Trans-America is entitled to the proceeds of the reinsurance contract, is it to its best interest that the compromise offer be accepted?

Melco insists that it is a third party beneficiary to the contract between Trans-America and Employers because the contract was made for the benefit of the policy holders of Trans-America.

■ It is uniformly the rule in Alabama and most other jurisdictions that under an ordinary reinsurance contract, there is no privity between the reinsurer and the insured authorizing a recovery against the reinsurer by the insured. United States Fire Ins. Co. v. Smith, 231 Ala. 169, 164 So. 70, 103 A.L.R. 1468; Moseley v. Liverpool & London & Globe Ins. Co., 104 Miss. 326, 61 So. 428; Empire State Ins. Co. v. Collins, 54 Ga. 376; Stickel v. Excess Insurance Co. of America, 136 Ohio St. 49, 23 N.E.2d 839; Insurance Co. of Pennsylvania v. Park & Pollard Co., 190 App.Div. 388, 180 N.Y.S. 143; Id., 229 N.Y. 631, 129 N.E. 936; 13 Appleman Insurance Law and Practice Sections 7681, 7694; Richards on Insurance, Sec. 36, p. 124; 103 A.L.R. 1486 a.; 46 C.J.S. Insurance §§ 1220 b, 1232 a. A different rule obtains where the contract of reinsurance goes further than the "ordinary" contract as did the contract in United States Fire Ins. Co. v. Smith, supra. Thus we, as was the court in that case, are faced with the question of whether this policy was an "ordinary" one. Stripping the insolvency agreement to the barest essential words, it says that in case of insolvency of Trans-America, " * * * the assuming insurer (Employers) hereby agrees that

* * * the reinsurance shall be payable by the assuming insurer (Employers) on the basis of the liability of the ceding insurer (Trans-America) under the contract * * * reinsured, * * * directly to the ceding insurer (Trans-America) or its liquidator, receiver or other statutory successor."

We cannot extend or enlarge a contract by implication to embrace an object different from that originally contemplated by the parties. "Courts cannot tamper with and change the terms of contracts, nor can they substitute as beneficiaries thereunder unnamed and unintended strangers who have nothing whatever to do with either the contracts or the contractors. To exercise such powers would be to usurp despotic authority." Goodman v. Georgia Life Ins. Co., 189 Ala. 130, 66 So. 649, 650. It is clear the Employers would not pay Trans-America until Trans-America had paid a claim exceeding $10,000 and then, Employers would reimburse Trans-America for the excess. But if Trans-America became insolvent, then Employers would pay the excess directly *to Trans-America or its receiver*. There is no mention, hint or suggestion that Employers has agreed to do more than indemnify Trans-America, or its receiver, or that this contract is made for anyone's benefit other than Trans-America. We are constrained to hold that this was an "ordinary" reinsurance contract.

The fact that Melco may have relied on the reinsurance rider would not entitle Melco or a judgment creditor of Melco to maintain an action directly against the reinsurer. This point, and the third party beneficiary contention, are covered in Greenman v. General Reinsurance Corp., 237 App.Div. 648, 262 N.Y.S. 569, 570, affirmed 262 N.Y. 701, 188 N.E. 128, where the court said:

"The plaintiff contends that, although he is not a party to the reinsurance contract, he is beneficially interested therein, and is entitled to recover that portion of the loss reinsured. The defendant argues that there is no privity on the part of the plaintiff, and that its only obligation is to the New Jersey Company or its liquidator. The plaintiff concedes that the general rule is that stated in the authorities [Allemannia Fire Ins. Co. of Pittsburg, Pa. v. Firemen's Ins. Co. of Baltimore, 209 U.S. 326, 332, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948; Jackson v. St. Paul Fire & Marine Ins. Co., 99 N.Y. 124, 129, 1 N.E. 539; Insurance Co. of Pennsylvania v. Park & Pollard Co., 190 App.Div. 388, 393, 180 N.Y.S. 143, affirmed 229 N.Y. 631, 129 N.E. 936; Joyce, Insurance (2d Ed.) § 117] that ordinarily the contract is one of indemnity to the reinsured; and that a reinsurer is under no contract obligation to the original insured and does not become liable to him. But he says that under the terms of the contract the intent was that the defendant should become liable directly to those suffering loss. This by reason of the fact that the agreement preceded the issuance of the liability policy; that by the terms of the policy there was an agreement of 'partnership' and the two companies became 'coinsurers'; and for other reasons of the same general character.

"It is sufficient to say that the language of the agreement does not sustain the rather subtle and ingenious argument of plaintiff's counsel. There is nothing in the contract when fairly read and rationally construed to indicate a purpose of coinsurance. Moseley v. Liverpool & London & Globe Ins. Co., 104 Miss. 326, 61 So. 428. The cases in which an insured may recover from a reinsurer are those where the language of the policy itself indicates the intent to become directly liable. This occurs in cases where a company is going out of business and transfers its risks to another which agrees to pay; or where all risks are assumed. Glen v. Hope Mut. Life Ins. Co., 56 N.Y. 379; Fischer v. Hope Mutual

Life Ins. Co. of New York, 69 N.Y. 161; Joyce, Insurance (2d Ed.) § 117. It would be a strained construction of the language of this contract to find a direct obligation to the insured. It is a contract of indemnity with the New Jersey company in what appears to be the ordinary terms of reinsurance. Privity between defendant and the plaintiff is lacking. The insolvency of the reinsured does not change the nature of the obligation. Herckenrath v. American Mutual Ins. Co., 3 Barb. Ch. 63.

"In a second cause of action the plaintiff alleges that the insured was advised of the reinsurance agreement and relied on it before taking out his policy. Assuming this to be true, there would be no change of the written agreement between the reinsured and the reinsurer. No new terms of mutuality would arise between the reinsurer and the insured. The latter would not be liable to the former for premiums; nor would the reinsurer become liable directly because of the confidence inspired in the insured that he had greater security. It would still remain a contract of reinsurance with defendant obligated only to the New Jersey company. In Globe Nat. Fire Ins. Co. v. American Bonding & Casualty Co., 198 Iowa 1072, 195 N.W. 728, 200 N.W. 737, 35 A.L.R. 1341, there was recovery in a suit in equity from the reinsurer by one who had imposed a condition in advance of the insurance of its bank deposits that there should be reinsurance. It appears that the bonding company (evidently the reinsured) joined in asking that it be held that the contracts were entered into for the benefit of the insured, and that the proceeds of the recovery be applied to the loss. The court recognized that its decision was contrary to the general rule, but justified it under the peculiar state of facts presented. It is unnecessary to determine whether we would follow the doctrine of that case under

a similar state of facts. It is sufficient to say that it does not apply to the facts presented here in an action at law."

See also, Gutride v. General Reinsurance Corp., 167 Misc. 608, 4 N.Y.S.2d 387; Sofia Bros. v. General Reinsurance Corp., 153 Misc. 6, 274 N.Y.S. 565, 569.

█ Having decided that the receivers of Trans-America are entitled to the proceeds under the reinsurance and insolvency agreements, the question recurs as to whether the proceeds are general assets or should Melco or its judgment creditor have a priority over the other creditors. We are convinced that the contract requires Employers to pay the money to Trans-America, or its receiver, and the money belongs to that company as a general asset. It does not receive the money as agent or trustee for any particular party or policy holder. A similar "priority" contention was considered in Sofia Bros. v. General Reinsurance Corp., supra, where the court said:

"If the plaintiff's theory of ultimate beneficiary be adopted, it would follow that injured persons could, in the first instance, sue insurers, regardless of section 109 of the Insurance Law; that provision would become unnecessary. Too, a beneficiary under a life insurance policy could sue the reinsurer. And so could creditors of a beneficiary. A principal on a bond could sue a reindemnitor. Once the doctrine is embraced to the extent here advanced, its ramifications would seem boundless.

"The progressive and basically just enunciation of Lawrence v. Fox, supra [20 N.Y. 268], is recognized. 'The course of the late decisions is to enlarge, not to limit the effect of that case.' Seaver v. Ransom, 224 N.Y. 233, 240, 120 N.E. 639, 641, 2 A.L.R. 1187. But, when we balance the equities present here, we do not find them all on the plaintiff's side. The result of doing what the plaintiff asks

would be to constitute the plaintiff a preferred creditor of the Consolidated. It would deprive the general creditors of the Consolidated of recourse to the fund of $31,465. I perceive no just cause for awarding this plaintiff an advantage which would not accrue to the other creditors of the Consolidated, among them injured persons and next of kin of fatally injured persons. Equity should not be done to one person if it operates inequitably to others. It seems to me to be more in consonance with justice to distribute the equity as much and as widely as possible. That can be done here by constituting this $31,465 a fund in which all of Consolidated creditors, including the plaintiff, shall share."

That brings us to the final question as to whether the compromise offer of Employers should be accepted. The evidence shows that the negotiations between the receivers and Employers covered quite a period of time and included many conferences, and finally, the $130,000 settlement offer was made on a "take it or leave it" basis.

On this subject, the trial court said:

"The Court determines that the said proposed offer is reasonable and proper and that it is to the best interest of the Receivership for the Receivers to accept the proposed compromise offer of the said Employers Reinsurance Corporation of the payment of $130,000.00, and that the said offer should be accepted. The Receivers are accordingly now by the Court authorized and directed to accept said offer and to receive into their hands as funds of the Receivership the said sum."

We must assume that the trial court, in approving the compromise, took into consideration the probable validity of Employers' claims, the difficulty of enforcement by the receivers, the collectibility of any judgment recovered, the delay, expense and trouble of litigation, and the amount of the compromise offer as compared with the amount and collectibility of various judgments in favor of the receivers against Employers.

The evidence was taken orally before the trial court and we are not persuaded that the decree on the evidence was plainly or palpably wrong. We, therefore, must affirm those parts of the decree material to this appeal. 2A Ala.Dig., Appeal and Error, ☞1009(1), (2), (3).

Affirmed.

3 Div. 791
Granville Turner
v.
Bill Armstrong and Donald Pierce, as Receivers of Trans-America Insurance Company, a Corporation

Granville Turner was injured in a collision with a truck belonging to Covington County, driven by one McLaney, who was employed by the county. The county had insured the driver of the truck with Trans-America under a policy with limits of $50,000. Trans-America had reinsured all of its liability over $10,000 arising out of this policy with Employers. The premiums of Covington County to Trans-America, and Trans-America to Employers were paid. Turner sued McLaney. The Turner case was defended by counsel employed by Trans-America and Employers. Upon the trial, Turner received a verdict for $50,000.

When Turner was served as a "party respondent" to the application of the receivers to be permitted to compromise the claims against Employers, he filed pleas in abatement to the petition alleging that Employers had taken such an active interest in the Turner case that it had placed itself, by its own conduct, in privity with Turner. The court sustained the demurrer of the receivers and Employers to Turner's plea in abatement. Turner's demurrer to the petition was then overruled. A hearing was had, evidence taken ore tenus, and the court entered a decree approving the pro-

posed settlement and declaring the proceeds of the settlement to be general assets of the receivership.

The basic questions presented by Turner's appeal are:

(1) Was the reinsurance contract between Employers and Trans-America one for the benefit of third parties so as to vest in Turner rights against Employers; and

(2) Do the provisions of Tit. 28, §§ 11 and 12 apply to the reinsurance contract?

We have answered the first question in the negative in 3 Div. 790, and what is said there applies equally to Melco and to Turner. The two sections of Tit. 28 could not apply in 3 Div. 790, but Turner insists that they are applicable in his case. The pertinent part of § 11 provides:

"In respect to every contract of insurance made between an insurance company and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, occasioned by said casualty. * * *"

Section 12 provides a remedy in equity against the insurer for the injured party after recovering a judgment against the insured.

Applying § 11 to the instant case, it would read: "In respect to every contract of insurance made between an insurance company (Trans-America) and any person (McLaney) * * * by which such person (McLaney) * * * is insured

against loss or damage on account of bodily injury * * * of any person (Turner) for which loss or damage such person (McLaney) is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company (Trans-America) shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured (McLaney) of a final judgment against him for loss * * * occasioned by said casualty."

Turner would have us read the statute as follows:

"In respect to every contract of insurance made between an insurance company (Employers) and any * * * corporation (Trans-America), by which such * * * corporation (Trans-America) is insured against loss or damage on account of bodily injury * * * of any person (Turner), for which loss or damage such * * * corporation (Trans-America) is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company (Employers) shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured (Trans-America) of a final judgment against him for loss * * * occasioned by said casualty." Appellant makes an ingenious argument to support this interpretation, but we cannot agree with it.

█ Our statutes, §§ 11 and 12 of Tit. 28, were included in the 1923 Code to meet the decisions in Goodman v. Georgia Life Ins. Co., 189 Ala. 130, 66 So. 649, and Hollings v. Brown, 202 Ala. 504, 80 So. 792, wherein it was held that the injured judgment creditor could not proceed against the insurer when the policy required the insured to pay the loss before the insurer would become liable. Globe Indemnity Co. v. Martin, 214 Ala. 646, 108 So. 761. But, we do not understand that our statute undertook to do more than establish privity between the injured judgment creditor and

the insurer. We have held that these sections are read into, and become a part of the insurance contract. Employers Ins. Co. of Alabama v. Brock, 233 Ala. 551, 172 So. 671. But, it has never been held in Alabama that these sections apply to a reinsurer. Reinsurance is not a new development in the insurance field. The Legislature might very well include the reinsurer in the statute, but that is a legislative matter, and until that is done, we are constrained to hold that the sections do not warrant a construction or interpretation that the Legislature intended to go beyond an insurer to include a reinsurer under an "ordinary" reinsurance agreement, which we have found the one in controversy to be. We think the statement in Gutride v. General Reinsurance Corp., 167 Misc. 608, 4 N.Y.S.2d 387, 389, is applicable here:

"It is well settled that there is no privity of contract between the plaintiff and either one of the defendants. To obviate the hardships which arose by reason of that fact and the inability of the plaintiff in such a case to claim the benefits of a defendant's insurance contract of indemnity, section 109 of the Insurance Law was passed. Under that statute plaintiff was given the right of recourse against the negligent party's insurer. Such a recovery was denied in Greenman v. General Reinsurance Corporation, 237 App.Div. 648, 262 N.Y.S. 569, affirmed 262 N.Y. 701, 188 N.E. 128, against the reinsurer. While it is clear that plaintiff has recourse against its insurer under the provisions of section 109 of the Insurance Law, the statute would have to be stretched considerably to include liability of the reinsurer. That section is in derogation of the common law and has been strictly construed in Jackson v. Citizens Casualty Co., 277 N.Y. 385, 14 N.E.2d 446, where a right of recovery was denied to an assignee of a claimant who was endeavoring to obtain the benefits of the statute. The court held that those advantages are to be deemed personal and to exclude others than the claimant. By a parity of reasoning it would seem to follow that the liability of the insurer to the claimant excludes the liability of a reinsurer under the rule of strict construction. Plaintiff cites Fidelity & Deposit Co. of Maryland v. Pink, 302 U.S. 224, 58 S.Ct. 162, 82 L.Ed. 213, decided December 6, 1937, to the effect that it has changed the rule in Allemannia Fire Insurance Co. of Pittsburg, Pa. v. Firemen's Insurance Co. of Baltimore, 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948. The latter case held that under the given policy the insurer could adjust the full loss and demand the reinsurer's share of the adjustment even prior to payment of loss, whereas it is claimed that under the Fidelity & Deposit Case no demand could be made upon the Reinsurance Company until the insurer had paid the loss. Under that construction plaintiff contends that the reinsurer would escape scot-free because the insurer is insolvent and could not pay. Hence she argues that the changed situation should permit a more liberal construction of section 109 of the Insurance Law so as to permit direct recourse of the plaintiff against the reinsurer.

"I cannot entirely accept the statement of the plaintiff that the Allemannia rule has been reversed by the later case or that the reinsurer would virtually go scot-free as the result of that decision. A reading of the policy in the instant case and the rights given to the insurer, represented as here by the superintendent of insurance, to have recourse on losses in excess of $2,500 without prior payment, contradict any such gloomy foreboding. It is unfortunate that the salutary purpose of the law was not extended so as to include under the benefits of section 109 a right of recourse against

the reinsurer as well as the insurer, but I must accept the statute as it reads."

Appellant urges us to follow the case of Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163. Without a detailed discussion of that case, we think it sufficient to say that we agree with the trial court's opinion wherein he stated "An examination of the Homan case discloses that the reinsurance contract was entirely different from the one at bar and as held by the court in that case 'the contract was not strictly a reinsurance contract.' "

█   Appellant also insists that the trial court erred in refusing to permit the witness Garrett to answer questions as to the estimated value of certain files or cases. Mr. Garrett was one of the attorneys for the receivers. He and an attorney for Employers went over 25 or 30 files for several days and each assessed a value to each file on a case by case basis. Finally, the attorney for Employers made the offer of $130,000 in settlement of all liability of Employers. When Mr. Garrett took the stand as a witness and testified that the compromise offer was reasonable and he had recommended it to the court, he was cross-examined as to the value he put on each individual case. The question was—"Would you list the cases and value you placed on each one?" The witness declined to answer the question on the ground that it would be a violation of the attorney-client relationship. Tit. 7, § 438, Code 1940. The trial court ruled that such evidence would be inadmissible and sustained objections to a series of questions of similar import.

█   We think the trial court ruled correctly. We are cognizant of the rule cited by appellant that it is proper cross examination of an expert witness to inquire as to the grounds on which his stated conclusion rests. There is also the rule that the range of cross examination rests largely in the discretion of the trial court and his ruling thereon will not be revised on appeal unless it is made clearly to appear that error intervened to prejudice the objecting party. See Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141, for both rules. Here, Garrett was an expert witness. He was also one of the attorneys for the receivers. Some of the files he had testified about were cases in which suits were pending against Trans-America. If he were required to give testimony as to the value of any of those cases, and if he assessed any value above nuisance value, that would be an admission of liability, and that testimony, if later used in the trial of that case, would be highly prejudicial and injurious to the rights of the receivers. It is obvious that reason and common sense support the ruling of the trial court in sustaining objections to the questions to the witness Garrett. Moreover, appellant offered no evidence to show that the compromise offer was not reasonable, confining its efforts to show otherwise by the cross examination of the three witnesses of the receivers. We find no suggestion that injury resulted to appellant by reason of the court's rulings on the evidence.

The decree of the lower court is affirmed insofar as it relates to appellant.

Affirmed.

3 Div. 789
Employers Reinsurance Corporation
v.
Receivers of Trans-America Insurance Company, a Corporation

In the compromise offer of Employers which the receivers sought to have approved by the Circuit Court in Equity, there was a provision that the $130,000 would be subject to a possible offset of approximately $9,000 owed by Trans-America to Employers should the court allow such an offset. The exact amount was $8,928.11 which was the sum of the unpaid premiums which Trans-America owed Employers prior to the receivership.

The lower court held:

"With reference to the offset of $8928.11 for premiums claimed by Employers Reinsurance Corporation at the time of the Receivership, the Court determines that said amount was owing as claimed and that Employers Reinsurance Corporation is entitled to a general claim for said amount against Trans-America Insurance Company but is not entitled to offset said amount against the amount owing by it to Trans-America Insurance Company and as to said ruling disallowing said offset said corporation duly excepts."

It is from this part of the decree that Employers has appealed.

Appellant contends "that the statute, Tit. 7, § 350, which provides in effect that when two parties are indebted to each other, the debts may be set off against each other, applies here to entitle Employers to set off the debt Trans-America owes it against the debt it owes Trans-America under the reinsurance contract."

But an important question here is *when* Employers became indebted to the receivers of Trans-America.

■ As already noted in the opening statement to these three cases, Employers did not become liable as reinsurer under the "reinsurance contract" until Trans-America had actually paid the loss. That was an absolute condition precedent to any liability on the part of Employers. It is the "insolvency agreement" which provides for payment to the receivers in case Trans-America becomes insolvent. But the "insolvency agreement" does not become operative until after the insolvency of Trans-America. It must follow then, that Employers was not indebted to Trans-America prior to the insolvency.

■ After insolvency is established, a creditor's claim, so far as the assets are concerned, gives him no more than the right to file his claim seasonably and to share ratably in their distribution. Farish v. Hawk, 241 Ala. 352, 2 So.2d 407; Oates v. Smith, 176 Ala. 39, 57 So. 438.

In the instant case, Trans-America owed the premiums prior to its becoming insolvent, but prior to that time, Employers was indebted neither to Trans-America nor the receivers under the agreements.

There is no Alabama case in point. The case most analogous is Woodlawn Federal Savings & Loan Association v. Williams, 237 Ala. 446, 187 So. 177, 183. In that case, among the assets coming into the hands of the liquidating agent of an insolvent bank were notes of a debtor secured by building and loan stock, pledged as collateral. Failing to collect from the debtor, the liquidating agent foreclosed the lien on the collateral and became the owner of the stock. The liquidating agent then sought to assert against the association, repurchase provisions in favor of the owner of the stock. The building and loan association was a depositor in the failing bank and claimed the right to set off the value of the stock against its still unpaid deposit. This court held that no such right of set-off existed. It was said:

"When a bank fails, closes its doors, and is put into liquidation, its assets become a trust fund for the benefit of its creditors. Its assets are determinable as of that date, and the equities of all beneficiaries of the trust are fixed as of that date. No subsequent act of the liquidating agent in course of his duties as trustee can give one creditor a preference over others of like class.

\*   \*   \*   \*   \*   \*

"To allow this off-set is clearly and simply to give preference to one depositor over all others as regards assets which at the time of insolvency became the property of all alike. It is not a question of inchoate rights ripening into perfected rights; nor of equity treating that as done which ought to have been done. But in my

opinion, it is an effort to alter a status after equities of others have intervened, thus defeating such equities, and working a preference among those of equal equities. Equality is equity."

This seems to be in accord with the prevailing rule in this country. See Annotations, 71 A.L.R. 813; 128 A.L.R. 814.

To allow Employers this set-off would give Employers a preference over other creditors in that it would be receiving full payment of its claim while other creditors would be receiving only fractional payment.

The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.