**CITIZENS CASUALTY CO. OF NEW YORK v. AMERICAN GLASS CO.**

No. 9361.

Circuit Court of Appeals, Seventh Circuit.

Feb. 13, 1948.

Werner W. Schroeder, Theodore W. Schroeder, and Charles Leviton, all of Chicago, Ill., for appellant.

Harold T. Halfpenny, Richard F. Hahn, and James F. Flanagan, all of Chicago, Ill., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court, entered March 13, 1947, allowing defendant's motion to dismiss the plaintiff's amended complaint, and dismissing the same. Plaintiff, a New York corporation, is an insurance company, licensed and authorized to do business in the State of Illinois, and is in the business of writing policies of insurance covering loss due to breakage of plate glass. Defendant is an Illinois corporation, engaged in the business of selling and installing plate glass.

The amended complaint contains seven counts. Count 1 recites, among other things, that the plaintiff in writing plate glass insurance issued two forms of policies with respect to the payment of premiums, one form requiring the payment of the entire premium upon the issuance of the policy or shortly thereafter, and the other form being a "premium retention policy" requiring payment of 50% of the premium upon issuance of the policy and the balance only in the event of a loss. The policies provided that in case of loss, payment could be made the policyholder in cash or by replacement of the glass. The policyholder was given the privilege of requesting immediate replacement or postponing replacement until a later period. If he adopted the latter alternative, plaintiff issued a written "rider" admitting liability.

The postponed replacements are carried on plaintiff's records as "abeyance losses."

On February 19, 1942, the plaintiff and defendant entered into a contract effective from January 1, 1942, to January 1, 1943, providing, among other things, that the defendant was to replace glass in accordance with the provisions of the policies issued by the plaintiff for locations in the metropolitan area of the City of Chicago, State of Illinois, make said inspections and surveys and recommendations as to repairs and improvements, make minor repairs necessary to safeguard the insured glass against breakage. The plaintiff, among other things, agreed to pay the glass company 46% of the premiums earned each month, and 46% of any retentions which became due.[1]

It is alleged that plaintiff has performed all the conditions of the contract and has paid or credited defendant with all amounts due it and that certain "abeyance losses" which occurred in 1942 were replaced by defendant, but on September 16, 1945, the defendant notified plaintiff that it would no longer replace any losses and since said date has refused to replace such losses and disaffirmed its obligation under the contract. It is alleged, as of September 16, 1945, there was due to policyholders from plaintiff on the unpaid riders, $1331.51, and from the policyholders sustaining such losses retention premiums amounting to $751.74, of which last mentioned sum defendant is entitled to a credit of 46%, or $345.80, making a total due plaintiff from defendant of $985.71.

In the alternative, it is alleged that the defendant having been a party to a somewhat similar contract which had been ruled illegal in a 1936 opinion of the Attorney General of Illinois and knowing

[1] It is alleged that the defendant represented that it would submit the contract or a similar one to the insurance department of the State of Illinois for approval, and after being often requested, the plaintiff obtained an opinion or ruling of the Director of Insurance that formal approval of such contract was not required. In support of this allegation, there is set forth a letter, dated June 19, 1943, purported to have been written by the Director of Insurance to a member of the Illinois House of Representatives, in which it was stated that "the Department does not consider a maintenance contract with an insurance company under the jurisdiction of surveillance of the State." A copy of this opinion, so it is alleged, was enclosed in a letter dated June 24, 1943, from the defendant to the plaintiff, in which it was stated that the enclosure was "relative to the special contract that we have with your company, as well as others." In our view of the situation, these footnote allegations are of minor importance.

said opinion but not disclosing such knowledge to plaintiff (which had no knowledge of said opinion) made the representation that it would submit the contract or a similar contract to the insurance department of Illinois for approval, and thereafter did obtain the opinion from the insurance director heretofore referred to, and that plaintiff had done everything in its power to comply with the Illinois insurance laws. Defendant knowingly misled and induced plaintiff to enter into such contracts and when to its advantage to do so refused to perform its obligations, relying on the Attorney General's opinion to protect it from liability. Plaintiff paid defendant 46% of the earned premiums, defendant did not entirely perform its obligations and was therefore unjustly enriched in the sum of $1000. Judgment is demanded in the sum of $985.71 and costs, or, in the alternative, $1000 and costs.

The allegations of counts 2, 3 and 4 are similar to those of count 1, except they are based upon three subsequent annual contracts in effect successively from January 1, 1943, to January 1, 1946. The percentage of premiums which the defendant was to receive under these contracts was reduced to 43%. Under the terms of the 1943, 1944 and 1945 contracts, there is claimed to be due respectively the sums of $6247.34, $4742.11 and $26083.65. On the unjust enrichment theory, judgment is asked in the sums of $6500, $5000 and $27000, for each period of time respectively.

Count 5, in addition to the pertinent allegations of count 1, alleges that after certain retention premiums had been paid under policies whereby a portion of the premium was paid, the balance not to be collected until a breakage occurred, defendant, pursuant to the terms of a verbal agreement, collected such retention premiums from plaintiff's policyholders and retained the entire amount, although it was entitled to retain only 43% of such amount; that is to say, the defendant collected $2138.50, of which plaintiff was entitled to 57% or $1218.95, for which plaintiff asks judgment.

Count 6 reiterates the pertinent allegations of count 1 and alleges that plaintiff from time to time advanced sums to defendant to apply on payments which might become due from plaintiff to defendant; that as of September 1, 1945, plaintiff had overpaid the defendant $370.21; that on September 4, 1945, plaintiff advanced to defendant the further sum of $3000, to apply on any sums which might become due from plaintiff to defendant under the contract during the balance of the year; that there are no offsets due defendant and that defendant owes the sum of $3370.21, together with interest on $3000 from September 4, 1945; that in the alternative, defendant fraudulently received the said sums, intending then to repudiate the contract, and was unjustly enriched in said sum of $3370.21.

Count 7 is a recapitulation of the previous counts and alleges that the defendant is indebted to plaintiff in the total sum of $42,647.97 and interest, or that in the alternative, defendant has been unjustly enriched in the sum of $44,089.16.

Defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted is predicated upon the following reasons:

"1. The contracts, and each of them, upon which plaintiff bases its claims, are null, void, unenforceable and against public policy and Section 173 of the Illinois Insurance Code, for the reason that said contracts are contracts of insurance entered into by the defendant, which is not alleged to be authorized and empowered to engage in the business of insurance.

"2. The contracts, and each of them, upon which plaintiff bases its claims, are null, void, unenforceable and against public policy, for the reason that the plaintiff has no insurable interest in the subject matter of said contracts and said contracts are therefore gambling contracts."

We experience some difficulty in ascertaining just what issue or issues are presented on this appeal. While the defendant states in its brief that the court below found that the contracts relied upon are contracts of insurance and therefore regulated by statute, we find nothing in the record to support the assertion. In fact, there is nothing to indicate on what basis the amended complaint was dismissed other than the reasons assigned in the motion

to dismiss. Moreover, defendant in its brief expressly disclaims that it is relying upon any contention that the contracts are gambling contracts or that they are ultra vires. This concession appears to eliminate the necessity for consideration of paragraph 2 of defendant's motion to dismiss as a basis for sustaining the order appealed from.

Defendant contends that the contracts in suit are insurance contracts, and it being unauthorized to do an insurance business and the contracts not being approved by the Director of Insurance of the State of Illinois, that they are void and unenforceable. The plaintiff contends that the contracts are not insurance contracts but are contracts for the rendition of service or, in the alternative, that they are reinsurance contracts. The plaintiff further contends that irrespective of the category to which these contracts may be assigned, lack of authority on the part of the defendant to enter into such contracts cannot be utilized by it as a defense.

A number of authorities from other states are cited by the parties in support of their respective contentions. The questions for decision being controlled by Illinois law, particularly the Illinois Insurance Code, we think we need not be too much concerned with authorities from other jurisdictions.

■ We have no difficulty in rejecting plaintiff's contention that the contracts are nothing more than service contracts. It is true that the defendant was obligated to render on behalf of the plaintiff a large amount of service, which the plaintiff under its contracts with the insureds was required to perform, and if the contracts had provided that the defendant be compensated only for the service actually performed, they would be typical service contracts. But such is not the situation. It was provided that defendant receive from the plaintiff 46% (or 43%) of the amount of premiums collected or earned by the plaintiff on policies issued by it. Defendant was entitled to this percent of the premiums irrespective of whether the plaintiff sustained any loss on account of the policies which it had issued. As to the services which defendant was required to per-

form, it merely stepped into the shoes of the plaintiff and did so for a stipulated amount of the premium received or earned on the policies issued by the plaintiff. Defendant's compensation depended upon the amount of premiums collected or earned by the plaintiff from its policyholders and not upon the amount of service rendered by the defendant. We think we need cite no authority in support of our conclusion that these are not service contracts, particularly in view of our conclusion as we shall now show that they are contracts of reinsurance.

■■ The Illinois cases, as well as the Illinois Insurance Code enacted in 1937, Ill.Rev.Stat.1945, c. 73, § 613 et seq., clearly recognize what are designated as contracts of reinsurance as distinguished from insurance contracts. In numerous cases the courts of Illinois have defined what is meant and intended thereby. In Baltica Ins. Co. v. Carr, 330 Ill. 608, 613, 162 N. E. 178, 180, the court stated: "Reinsurance is a contract between the direct insurer and the reinsurer, by which the latter agrees to protect the former from risks already assumed. The insured, unless the contract so provides, has no concern with the contract of reinsurance, and the reinsurer is not liable to the insured either as surety or otherwise. The contract is not one of insurance, but simply one of indemnity. It is not a contract against loss by fire or other hazard provided in the original policy, but is one against loss by or on account of an outstanding contract of insurance with the owner of property, or simply a contract to indemnify the original insurer for a loss he may sustain upon his contract of insurance."

In Union Central Life Ins. Co. v. Lowe, 349 Ill. 464, 468, 182 N.E. 611, 613, the court stated: "If a foreign company, after writing business in the state of Illinois, desires to indemnify itself in whole or in part on account of such risks, and reinsures them in another company, that transaction is separate and distinct from the original undertaking. In the original transactions in this case appellant was the insurer. When it procured reinsurance, it became an insured. Reinsurance is defined to be a contract that one insurer

makes with another to protect the first insurer from a risk it has already assumed. The contract of insurance and that of reinsurance remain totally distinct and unconnected. The reinsurance contract is not one of insurance but simply one of indemnity."

Other cases which have distinguished between a contract of insurance and one of reinsurance are Vial v. Norwich Fire Ins. Society, 257 Ill. 355, 362, 100 N.E. 929, 44 L.R.A.,N.S., 317, Ann.Cas.1914A, 1141; Weil v. Federal Life Ins. Co., 264 Ill. 425, 432, 106 N.E. 246, 249, Ann.Cas.1915D, 974. The latter case emphasizes that in a reinsurance contract there is "no privity of contract between the reinsurer and the person insured." The effect of the holding is that the contract there under consideration was not one of insurance because it assumed and guaranteed to pay to the policyholders in accordance with the terms of the policies issued by the principal insurer. Defendant stresses an opinion by the Attorney General of the State of Illinois, directed to the then State Director of Insurance (Reports of the Attorney General, 1936, page 153), under facts quite similar to those of the instant case. The writer of that opinion, however, expressly concludes that the contract in question was one of reinsurance. Moreover, the Insurance Code of 1937 contains a division designated as Article XI, entitled "Reinsurance," and it is pertinent to note that defendant's motion to dismiss is predicated upon Sec. 173 of this Article, which would seem to indicate a recognition by the defendant that the contracts in suit are reinsurance contracts.

While we are convinced that the contracts in suit are reinsurance contracts, at the same time we are of the view, as subsequently shown, that it is not too important whether they be thus classified or treated as insurance contracts. In either event, as we construe the Illinois law, the defendant cannot escape liability on the basis that it was not authorized to engage in insurance business or that the contracts in suit were not approved by the Director of Insurance. Plaintiff, although a foreign corporation, was authorized to do an insurance business in this State. The contracts which it made with the defendant have, so it is alleged, been performed on its part, and defendant has reaped the benefit therefrom. The defendant has during the period of the contracts received large sums of money from the plaintiff, including advancements over what it was entitled to receive, and now not only refuses to perform but expressly repudiates the contracts and asserts in substance that it has no obligation because it was not authorized to do an insurance business in Illinois, and that the contracts were not approved by the Director of Insurance and are therefore void and of no effect.

■ Prior to a consideration of the relevant provisions of the Illinois Insurance Code, it seems pertinent to note that it has been held that contracts of reinsurance were valid under the common law and that no empowering or validating legislation was required before an insurance company could validly enter into a reinsurance contract either as a ceding or accepting company. Insurance Co. of North America v. Hibernia Ins. Co., 1891, 140 U.S. 565, 11 S.Ct. 909, 35 L.Ed. 517; Phoenix Ins. Co. v. Erie & W. Transportation Co., 1886, 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873. See also 8 Couch Cyc. of Ins. Law, sec. 2256. It would seem, therefore, and we think the defendant so recognizes, that the contracts in suit are not invalid unless entered into in violation of some express statutory prohibition.

■ Defendant, in arguing that the contracts are invalid and therefore unenforceable under Illinois law, vacillates between its primary contention that they are insurance contracts and its tacit concession that they are reinsurance contracts. Here, as in its motion to dismiss, it places its whole reliance upon Sec. 173 of the Illinois Insurance Code, chapt. 73 Sec. 785, Ill.Rev. Stats. 1945. This section is found under Article XI of the Code having to do with reinsurance. The section is entitled "Reinsurance authorized and reserve credits," and provides: "Subject to the provisions of this article, any domestic company may, by a reinsurance agreement, accept any part or all of any risks of the kind which it is authorized to insure and it may cede all or any part of its risks to another solvent company having the power to make such

reinsurance. It may take credit for the reserves on such ceded risks to the extent reinsured, except that (a) No credit shall be taken for such reserves unless the company accepting the reinsurance is authorized to do business in this State or is a solvent company approved by the Director upon a showing by a ceding company that it is unable to readily procure such reinsurance on reasonable terms with an authorized company."

It will be noted that this section is made applicable only to a "domestic company," having reference no doubt to a domestic insurance company. Defendant argues, however, that it applies to the plaintiff, a foreign insurance company. No authority is cited in support of this argument, and we think if the legislature had so intended it would have said so. A reading of the numerous articles of the Code makes it plain that the terms "domestic" and "foreign" were employed with discrimination. In the very beginning (Sec. 2, Ill.Rev.Stat. 1945, c. 73, § 614, under the heading of "General Definitions," we find the terms "company" referring to an insurance company doing business in the State, "domestic company" meaning an insurance company organized under the laws of Illinois, and "foreign company" meaning a company incorporated under the laws of some other State. Some of the articles are entitled "domestic companies" (Articles II, III and VIII). Article IX is entitled "Provisions Applicable to All Companies." Article VI has to do with "foreign companies." Thus it would seem that if it had been intended to make Article XI on reinsurance applicable to foreign companies or all companies, it would have been so stated. Also, a literal reading of this section makes it inapplicable to the defendant which, while a domestic corporation, is not an insurance company or engaged in that business, which is the kind of a company referred to in the section. Of more importance, however, is the failure to prohibit the recognized common law right to enter into such contracts. The most that can be said is that it prescribes some limitations upon a domestic insurance company in the exercise of such right. The domestic company, however, is permitted to take credit for reserves on ceded risks if it reinsures with an authorized company, but the only penalty imposed for reinsuring with an unauthorized company is that the insurer shall not take credit for such reserves.

It is interesting to note that in the Illinois Insurance Code Annotated, the following comment is made concerning Sec. 173 (page 320): "Under the section all class of companies may, upon the showing therein provided, reinsure their risks in unauthorized companies. Prior to the enactment of the Code, fire companies licensed in this state were prohibited from ceding to or accepting reinsurance from any unauthorized company on any risks upon property in this state."

We are unable to interpret this section as defendant would have us do. In the first place, we do not think it is applicable to the parties or the contracts involved in this suit but, even so, there is nothing in the language which would permit, much less require, a holding that the contracts are prohibited and unlawful.

At this point we again refer to the 1936 opinion of the Attorney General, supra, upon which defendant so strongly relies. True, the Attorney General held that the reinsurance contract then under consideration was invalid. No good purpose could be served in attempting to distinguish the situation there existing and that of the instant case. It may be pointed out, however, that the reinsurance contract was between an unauthorized person and an authorized domestic insurance company, and that the opinion was based upon a provision of the Illinois Insurance Law as it existed prior to the time of the present Insurance Code. It also may be noted that while it was the opinion of the Attorney General that the reinsurance contract was invalid as between the State and a domestic insurance company, there is nothing to indicate that such invalidity could be interposed by the reinsurer as a defense to a contract of which it was a party and which had been performed by the other party.

Our view that the reinsurance contracts in suit are not void is strengthened by Article VII, entitled "Unauthorized Companies." Subsection (1) of Sec. 121, Ill.Rev.

Stat.1945, c. 73, § 733(1), provides: "It shall be unlawful for any company to enter into a contract of insurance as an insurer or to transact insurance business in this State, without a certificate of authority from the Director; provided that this subsection shall not apply to contracts procured by agents under the authority of section 445, nor to contracts of reinsurance."

Subsection (3) imposes a penalty of not less than $100 and not more than $1000 for each offense, and each day in which a violation occurs constitutes a separate offense.

It is highly significant that subsection (1) is expressly made inapplicable to "contracts of reinsurance." This, so we think, evidences that the legislature intended to distinguish between unauthorized insurance contracts and reinsurance contracts. The former were declared unlawful, but no corresponding declaration was made as to the latter. This not only is inconsistent with but supports the interpretation which we have placed upon Sec. 173 of the reinsurance article.

Furthermore, subsection (4) of Sec. 121 provides: "The failure of a company to obtain a certificate of authority shall not impair the validity of any act or contract of such company and shall not prevent such company from defending any action at law or suit in equity in any court of this State, but no company transacting insurance business in this State without a certificate of authority shall be permitted to maintain an action at law or in equity in any court of this State to enforce any right, claim or demand arising out of the transaction of such business until such company shall have obtained a certificate of authority."

We presume that the purpose of this subsection was to prevent an unauthorized insurance company from taking advantage of its own wrong. Of course, the provision applies to unauthorized insurance companies but there is no reason to think that the policy of the law would uphold a contract made by a company incorporated to carry on an insurance business but not qualified, and at the same time strike down as invalid a contract by a company not incorporated for insurance purposes and also not qualified under the insurance code. Prior to the adoption of the code and subsection (4), it was held that a policy issued by an unlicensed insurance company may be enforced against it and the company is estopped to claim that it is not licensed in the State. Watertown Fire Ins. Co. v. Rust, 141 Ill. 85, 30 N.E. 772. The sole observation which defendant makes concerning subsection (4) is that it has no application to contracts of reinsurance which are governed by Sec. 173. Even so, the fact that no such provision is contained in the reinsurance article is a further indication that unauthorized reinsurance contracts were not made unlawful. If the legislature had so intended, it is hardly conceivable that it would have expressly provided that the failure of an insurance company to obtain a certificate of authority should not impair the validity of its contracts after it had declared the same unlawful and prescribed a severe penalty for violation, and at the same time have failed to make a similar provision as to unauthorized reinsurance contracts. And the only reason which we are able to discern for this failure is that reinsurance contracts were not declared and were not intended to be made unlawful.

It is therefore our conclusion that the contracts relied upon are recognized by the courts of Illinois, as well as its statute, as contracts of reinsurance. We further conclude that defendant's lack of authority to enter into such contracts or its failure to obtain their approval by the Director of Insurance do not under the Illinois law make them unlawful either expressly or by implication. Furthermore, assuming that the contracts were unauthorized, there is no public policy of the State expressed either in its statute or the decisions of its courts which would permit the defendant to utilize such want of authority as a defense under the circumstances alleged. The public policy of the State is to the contrary.

The complaint, in our judgment, stated a cause of action. The order dismissing the same is therefore reversed and the cause remanded, with the direction that it be vacated.