418 A.2d 724

**Henry C. LIVINGSTON, Jr.**

v.

**Grace E. LIVINGSTON, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed Feb. 27, 1980.

Gary P. Caruso, Belle Vernon, for appellant.

Donald J. McCue, Connellsville, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

At issue is the ownership of a $40,000 certificate of deposit. The certificate in dispute is registered in the name of Henry C. Livingston, Jr., appellee. The appellant, Grace E. Livingston, is appellee's wife, and claims a tenancy by the entireties interest because either: (1) appellee intended to create an estate by the entireties when he purchased the certificate in 1976 or, (2) appellee by his conduct should now be estopped from denying the existence of a tenancy by the entireties in the certificate.

Henry and Grace Livingston were married in 1941. Henry later became an employee of the Pittsburgh and Lake Erie Railroad and so continued until he suffered serious personal injuries including an amputation of his arm above the elbow. As a result of his employment accident in 1970, he received a substantial cash settlement from the railroad. The proceeds were payable to him individually and a major portion of the fund was invested in certificates of deposit.

Appellee separated from appellant in the spring of 1978. At that time, there were two certificates of deposit: the one at issue herein, and another in the joint names of the parties. They were, until the time of trial, in the possession

of appellant who refused to surrender them to her husband. Appellee brought suit to gain possession of the certificates as well as several passbooks for jointly held savings accounts.

After hearing testimony, the court issued a decree nisi which, inter alia, awarded the $40,000 certificate to appellee. Exceptions thereto were dismissed by the court en banc and this appeal followed.

The original deposits were made in 1972 and the evidence indicated that the amounts in various accounts were determined at least in part by the limits of federal savings insurance. These certificates were in a number of individual, joint, and trust accounts of appellant and appellee and also in the name of their daughter, Janet. Several certificates were later redeemed in order to purchase a house and in February, 1976, two new certificates were purchased with money from the balance including the $40,000 certificate at issue in this appeal.

█ Our scope of review is limited. The findings of a chancellor, affirmed by the Court en banc have the effect of a jury verdict and may not be reversed unless a review of the record reveals that they are unsupported by the evidence. or predicated upon erroneous inferences and deductions or errors of law. *Payne v. Kassab*, 468 Pa. 226, 361 A.2d 263 (1976); *Sterrett v. Sterrett*, 401 Pa. 583, 166 A.2d 1 (1960).

█ We first deal with appellee's argument that the determination of ownership is controlled by the provisions of the Act of July 9, 1976 P.L. 547, No. 134 (20 Pa.C.S.A. § 6303) which provides:

OWNERSHIP DURING LIFETIME (a) JOINT ACCOUNTS—A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

This act applies to joint accounts in a certificate of deposit, 20 Pa.C.S.A. § 6301. It is doubtful, however, that the act has any application here since the certificate involved is not

titled in joint names. Nevertheless, we find the provision inapplicable on other grounds.

Recognizing that the effective date of the act is September 1, 1976 and that the certificate in question was purchased in February, 1976, appellee nevertheless argues that the act applies since the present controversy arose after the enactment of the statute. However, the act is specifically applicable to "any account created thereafter (September 1, 1976) and to any account existing prior thereto when a contract of deposit concerning it is executed after September 1, 1976." Act of July 9, 1976 § 2. Since this account existed before the crucial date and there is no evidence that a contract of deposit was executed thereafter, the provisions of the act do not apply to the present situation.

Two basic facts are not in dispute. First, the money used to purchase the certificate in February, 1976 can be traced to the proceeds of a personal injury claim paid to appellee and, second, the certificate was purchased in appellee's name only. It would appear then, that for appellant to prevail on her first theory, there must at some time have been a gift to her of an entireties interest in the certificate or of the resources which were used to purchase the certificate. To establish a valid inter vivos gift, two elements must be shown: intention to make an immediate gift, and actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift. *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (1978).

Appellant argues that appellee's handling of the funds and his statements up to and including the time when the certificate was purchased on February 13, 1976 demonstrate an intention to create a joint interest in all of the proceeds of the injury settlement. Thus, in February, 1972, when the initial accounts were opened, the sum of $110,000 was placed in five accounts and only $20,000 was in Henry's name alone. Finally, in 1976, $60,000 was reinvested, this time the $40,000 certificate being in Henry's name alone and the other $20,-000 in the names of Henry and Grace (the chancellor found this certificate to be entireties property; there is no appeal

from this finding). Furthermore, it is argued appellee had used part of his settlement fund to purchase a house owned as tenants by the entireties; the couple had used income from the investment for their mutual benefit; certain statements appellee had made at various times indicated that it was his intention that all of the funds were equally owned; [1]

1. The testimony of Mr. Livingston was somewhat confusing as to his intent with respect to ownership of the certificates. For example, *Mr. Livingston testified*:

Q. When you opened these accounts initially, Mr. Livingston, back in 1972, was it your express intention that all of this money should be owned by both you and your wife?

A. Yes, sir, that is the only way the bank would put it in.

Q. What was your intention at that time?

A. I wanted it in my name, but they wouldn't put the certificate in that way.

Q. You are saying at that time you wanted all of it in your name alone?

A. Yes sir.

Q. And the reason you did not was the bank said you couldn't put it that way?

A. Certain denominations it had to be divided down.

Q. Was that because of insurance, the Federal Deposit Insurance only covered so much of an amount?

A. I imagine so.

\* \* \* \* \* \*

*And again (with respect to the $40,000 certificate).*

Q. And at whose direction was it placed in your name?

\* \* \* \* \* \*

A. Mr. Hixenbaugh, the Greensburg Savings and Loan.

Q. And is that his recommendation, it be placed in your name alone?

A. Well they had to divide it down into denominations so much could only be in certain certificates.

Q. Was that done with your approval?

A. Yes sir.

Q. Was that the way you want it?

A. Yes sir.

Q. The other CD in the amount of $20,000, was placed in both names?

A. Yes sir.

Q. Was that the way you wanted it?

A. I didn't want it that way, but that is the way the bank advised me we had to do it.

Q. How did you want it?

A. I wanted it all in my name.

RECROSS EXAMINATION BY MR. CARUSO:

\* \* \* \* \* \*

and appellee had acquiesced in allowing the certificates to be in the possession of his wife.

We have reviewed the record and find that the chancellor properly found that the certificate was the sole property of appellee. It should require no authority other than human experience to expect that when a spouse in a settled marriage relationship is suddenly and for the first time in possession of substantial funds to invest, he would not ordinarily do so with the canons of ultimate legal entitlement foremost in his mind. The history of the investment of appellant's funds indicates that the prime factor in the titling of their investments was insurance protection.

Q. I asked you if it was your intention that this money be owned by both you and your wife.

A. Well, I had to agree with the bank the way they wanted to put it in because they were the only denominations you could put the certificates in.

Q. But you wanted it to be both you and your wife's money?

A. Well, it had to be that way.

Q. But it isn't.

A. Therefore, I had to agree with it.

Q. Well $20,000 of it is that way.

A. Yes.

Q. But $40,000 is not that way.

A. Right.

Q. Did you want that $40,000 to also be owned by you and your wife?

A. No, it couldn't be according to the bank.

Q. Well, not what the bank wanted you to do. I want to know what you wanted to do.

A. I would rather have had it that way but it wasn't put that way. THE COURT: Which way? You would rather have it which way?

A. Both together.

But the testimony of Mrs. Livingston also was uncertain:

Q. Are you saying the savings certificates in your name alone were yours?

A. Yes sir, I am.

Q. And you are saying the savings certificates in your husband's name alone are his then too, is that right?

A. Now he claims it.

Q. Isn't that what you are telling us? The savings certificates in his name are his and the same as the ones in your name were yours, isn't that true?

A. Well I believe they were both jointly, if it comes right down to that.

Nevertheless, it is significant that when the opportunity arose and with both parties present at the time of the transaction, the fullest insurable sum was placed in appellant's name alone.[2] Thus, while unquestionably and not surprisingly, Mr. Livingston made statements during the period that the marriage was thriving, that his money would be used for the joint welfare of him and his wife, there was no evidence of any unambiguous compact wherein appellee vested any portion of the fund in question in appellant. We conclude that there was no error in the chancellor's finding that there was no intention to make a gift of any part of the $40,000 certificate.

 Lastly, the argument is made that appellee should be equitably estopped from denying the creation of a tenancy by the entireties since his words and actions led appellant to rely on this expectancy to her detriment. Our cases on equitable estoppel provide:

> "The elements of estoppel are: (1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; (3) no duty of inquiry on the party seeking to assert the estoppel. If all the foregoing are present, a Court of Equity may prevent the party who mislead the other from denying his words of conduct."

*Stolarick v. Stolarick*, 241 Pa.Super. 498, 509, 363 A.2d 793, 799 (1976).

*See also Tallarico Estate*, 425 Pa. 280, 288, 228 A.2d 736, 741 (1967); *Northwestern Bank v. Com.*, 345 Pa. 192, 196–7, 27 A.2d 20, 23 (1942). The application of equitable estoppel to the facts of this case is from the outset, doubtful. Basic to equitable estoppel is that a person *mislead* another as to the

---

**2.** We note that the maximum amount of insurance protection for federal deposit insurance and federal savings and loan insurance was raised to $40,000 effective in November, 1974. See 12 U.S.C. § 1821 and 12 U.S.C. § 1728.

existence of certain facts.[3] Here, the deception must necessarily be that appellee led appellant to believe that she was joint owner of the certificate; this, then would necessarily involve the concession that the certificate was not in fact jointly owned, i. e., that it was owned solely by appellee. It is difficult to conceive of "reasonable reliance" therefore on any misrepresentation where it is undisputed that appellant knew the conceded fact by reason of being present when the certificate was taken out in her husband's name only, and had the certificate in her own possession.

■ Even if we were to accept appellee's expressions of marital economic benevolence as having the quality of being in fact misleading, it is evident that there is no proof of reasonable reliance on his words or conduct. There is no evidence that Mrs. Livingston did or failed to do anything as a result of her alleged belief in her husband's misrepresentations. In addition, it would seem, at the very least, if she believed that she was a joint owner, that at the pivotal time when he purchased the $40,000 certificate in his name alone, prudence on her part would have led her to protest his sole entitlement of the fund. An estoppel may be claimed by one who has acted in ignorance of the true state of facts and who was without means of informing himself of their existence. If he had notice of the facts and was not mislead, there can be no estoppel. *Tustin v. Philadelphia and Reading Coal and Iron Co.*, 250 Pa. 425, 436, 95 A. 595, 599 (1915).[4]

Order affirmed.

3. See discussion of equitable estoppel by Spaeth, J., in *Com., ex rel., Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976) (concurring opinion).

4. Appellant has not argued the application of promissory estoppel, apparently realizing that there is no evidence of any action or forebearance on her part. See Restatement 2d. Contracts § 90 (Tentative Draft 1973); *Murphy and Slota v. Burke*, 454 Pa. 391, 398, 311 A.2d 904, 908 (1973).