451 A.2d 229

SCHUYLKILL PRODUCTS, INC., Appellant,

v.

H. RUPERT & SONS, INC., International Fidelity Insurance Company, United Bonding Insurance Company and Emmco.

Superior Court of Pennsylvania.

Argued Feb. 23, 1981.

Filed Sept. 24, 1982.

38

William D. Hutchinson, Pottsville, for appellant.

John Arnold Crisman, Berwick, for appellees.

Before SPAETH, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

May a materialman maintain a direct action against a reinsurer who has contracted with the surety on a contractor's bond to insure any loss which the surety may be called upon to pay? The trial court held that such an action could not be maintained and sustained preliminary objections in the nature of a demurrer to the materialman's second amended complaint. We affirm.

H. Rupert & Sons, Inc., (Rupert) entered a written contract to perform work for the Bloomsburg Sewer Authority. Schuylkill Products, Inc., the appellant herein, was a materialman who supplied sewer pipe to Rupert. In this action, appellant alleged that Rupert was indebted to it for materials sold and delivered in the amount of $7,407.

Prior to the commencement of work, Rupert delivered to the Authority a public works contractor's bond,[1] with surety,

1. *See* Public Works Contractors' Bond Law, Act of December 20, 1967, P.L. 869, § 1, 8 P.S. § 191 et seq.

providing security for costs of labor and materials. The co-sureties on that bond were United Bonding Insurance Company and Prudence Mutual Casualty Company. An affidavit attached to the bond recited:

That Treaties of (automatic) Reinsurance now exist between the Prudence Mutual Casualty Company and certain other surety companies by which the liability assumed by said Company under the Bond above described, is Reinsured in accordance with the following percentages, or in the following "Limits of Availability" (or, by Specific Facultative Reinsurance):

| Reinsurers and Participants | Amount Available | Amount Reinsured |
| --- | --- | --- |
| 1) International Fidelity Ins. Co. Newark, New Jersey | $ 62,300.00 | $ 42,000.00 |
| 2) Allegheny Mutual Casualty Company Meadville, Pennsylvania | 110,000.00 | 63,000.00 |
| 3) United Bonding Insurance Company Indianapolis, Indiana | 100,000.00 | 60,000.00 |
| 4) Home Owners Insurance Company Minneapolis, Minnesota | 130,000.00 | 60,000.00 |
| 5) Prudence Mutual Casualty Company Chicago, Illinois | 110,350.00 | 63,000.00 |
| 6) Emmco Insurance Company South Bend, Indiana | 2,900,000.00 | 180,000.00 |
| 7) Wisconsin Surety Company Madison, Wisconsin | 48,000.00 | 42,000.00 |

One of the defendants named in appellant's second amended complaint was International Fidelity Insurance Company. It caused preliminary objections in the nature of a demurrer to be filed on the grounds that it was a reinsurer whose contract was with a surety. However, it had no contract with and no obligation to pay appellant.[2] The trial court agreed, and this appeal followed.

2. Although the second amended complaint contained an averred conclusion that International Fidelity Insurance Company was a co-surety, the copy of the bond and attached affidavit which were attached to the complaint establish beyond peradventure of a doubt that appellee was a reinsurer and not a co-surety. In cases of such contradictions, it is the attached documents which are controlling. See Eberhart v. Nationwide Mutual Ins. Co., 238 Pa.Super. 558, 564

■ In order to sustain preliminary objections in the nature of a demurrer and dismiss the complaint without leave to amend, "it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." *Harley Davidson Motor Co., Inc. v. Hartman,* 296 Pa.Super. 37, 41, 442 A.2d 284, 285–286 (1982) quoting *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 282, 259 A.2d 443, 445 (1969). *Accord: Otto v. American Mutual Insurance Company,* 482 Pa. 202, 205, 393 A.2d 450, 451 (1978); *Longo v. Rago,* 287 Pa.Super. 509, 510, 430 A.2d 1006, 1007 (1981).

■ Appellant contends that a reinsurer on a surety bond issued under the Public Works Contractors' Bond Law is a proper party defendant in an action by an unpaid supplier. The law is clear, however, that there is no right of direct action against a reinsurer by any party except the reinsured. "[T]he ordinary contract of reinsurance operates solely between reinsured and reinsurer, and creates no privity whatever between reinsurer and the persons originally insured, the contract of insurance and that of reinsurance remain totally distinct and unconnected, and reinsurer is in no respect liable, either as surety or otherwise, to reinsured's policyholders; and accordingly they have no right of action against reinsurer on the contract of reinsurance, nor have they any right of action against reinsurer to reform the policy." 46 C.J.S., Reinsurance, § 1232.

■ The rule in Pennsylvania is in accord: "Re-insurance is properly applied to an insurance effected by one underwriter with another, the latter wholly or partially indemnifying the former against the risks which he has assumed; that is to say, after an insurance has been effected, the insurer may have the subject of insurance re-insured to him by some other. There is in such case, however, no privity between the original insured and the re-insurer; *the latter is*

n.6, 362 A.2d 1094, 1097 n.6 (1976); *Framlau Corp. v. County of Delaware,* 223 Pa.Super. 272, 277, 299 A.2d 335, 338 (1972); *McCoy v. Home Insurance Co.,* 170 Pa.Super. 38, 42, 84 A.2d 249, 251 (1951). *See also* Goodrich-Amram 2d § 1019(h):2.

*in no respect liable to the former, as a surety or otherwise,* the contract of insurance and of re-insurance being totally distinct and disconnected." *Appeal of Goodrich,* 109 Pa. 523, 529, 2 A. 209, 211 (1885) (emphasis supplied).

This view is shared almost unanimously by the courts of other jurisdictions which have considered actions by an insured against a reinsurer. *See Morris and Company v. Skandinavia Insurance Co.,* 279 U.S. 405, 408, 49 S.Ct. 360, 361, 73 L.Ed. 762 (1929); *Citizens Casualty Company of New York v. American Glass Company,* 166 F.2d 91, 94 (7th Cir. 1948); *Taggart v. Keim,* 103 F.2d 194, 197–198 (3rd Cir. 1939); *United States to the Use of Colonial Brick Corp. v. Federal Surety Co.,* 72 F.2d 964, 967 (4th Cir. 1934), *cert. denied,* 294 U.S. 711, 55 S.Ct. 508, 79 L.Ed. 1245 (1935); *American Cast Iron Pipe Co. v. Statesman Insurance Co.,* 343 F.Supp. 860 (D.Minn.1972); *Appeal of Goodrich, supra; Fontenot v. Marquette Casualty Co.,* 258 La. 671, 247 So.2d 572 (1971); *In Re Security General Insurance Co.,* 82 S.D. 47, 140 N.W.2d 676 (1966); *Winneshiek Mutual Insurance Asso. v. Roach,* 257 Iowa 354, 366, 132 N.W.2d 436, 444 (1965); *Crozier v. Lenox Mutual Insurance Asso.,* 252 Iowa 1176, 1181, 110 N.W.2d 403, 406 (1961); *Melco System v. Receivers of Trans-America Insurance Co.,* 268 Ala. 152, 157–158, 105 So.2d 43, 46–47 (1958); *Appeal of Schunk,* 231 Minn. 219, 222–223, 43 N.W.2d 104, 108–109 (1950); *Pink v. American Surety Company,* 283 N.Y. 290, 28 N.E.2d 842 (1940); *American Bonding Co. v. American Surety Co.,* 127 Va. 209, 218, 103 S.E. 599, 602 (1920); *Moseley v. Liverpool & London & Globe Insurance Co.,* 104 Miss. 326, 337, 61 So. 428, 430 (1913); *Vial v. Norwich Union Fire Insurance Society,* 257 Ill. 355, 357, 100 N.E. 929, 930 (1913); *Barnes v. Hekla Fire Insurance Co.,* 56 Minn. 38, 40, 57 N.W. 314, 314 (1893). *See also* 19 Couch on Insurance 2d § 80.66; 13 A. Appleman, Insurance Law and Practice §§ 7681, 7694; Annotation, Who May Enforce Liability of Reinsurer, 103 A.L.R. 1485 (1936).

■ We perceive neither practical nor policy reason for altering this rule in cases of reinsurers who contract with

sureties on contractors' bonds. The appellant, a material-man, contracted with Rupert, the contractor, and is protected by the bond, with sureties, which the contractor filed. The contract of reinsurance was between one of the sureties and appellee and, in the absence of language creating rights in third persons, vested no rights in appellant. Thus, appellant cannot maintain the present action against appellee, a reinsurer.

Appellant argues in the alternative that International Fidelity Insurance Company should be estopped from asserting its status as a reinsurer rather than a co-surety on the bond. This requires that we review the history of the proceedings in the court below.

Appellant's original complaint was filed on June 26, 1974. It contained an incorrect averment that the attached bond had been executed by appellee as co-surety with United Bonding Insurance Company. Despite the fact that an examination of the bond would have disclosed that it had not been executed by appellee, the answer contained an admission that appellee had executed the bond as co-surety. Appellee's defense, set forth in "new matter," was the statute of limitations of one year contained in the Public Works Contractors' Bond Law at 8 P.S. § 197.[3] The error was discovered during a pre-trial conference. Appellee thereafter requested and was granted leave of court to withdraw its answer and file preliminary objections nunc pro tunc. Appellant then requested and received leave to file an amended complaint. An amended complaint was filed, and preliminary objections thereto were argued and sustained with leave to appellant to file another amended complaint. *See Schuylkill Products, Inc. v. H. Rupert & Sons, Inc.,* 13 D. & C.3d 324 (Columbia Co. 1980).

When the second amended complaint was filed, with copy of bond and affidavit attached, it contained an averment that appellee was estopped from asserting that it was not a co-surety and merely a reinsurer. In support of this conclu-

**3.** This section was repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1413], effective June 27, 1978.

sion, appellant alleged that appellee's counsel had advised appellant that appellee was a principal surety. It was also alleged that appellant had relied thereon and had failed to discover that appellee was not a signatory to the bond. Preliminary objections were again sustained, this time without leave to file further amended pleadings.

An "estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence *induces another to believe certain facts* to exist and such other *rightfully relies and acts on such belief,* so that he will be prejudiced if the former is permitted to deny the existence of such facts." *In Re Estate of Tallarico,* 425 Pa. 280, 286, 228 A.2d 736, 741 (1967) quoting *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196, 27 A.2d 20, 23 (1942) (emphasis supplied). However, "[a]n estoppel does not arise where both parties are ignorant of the truth; the statement upon which an estoppel may be based must have been made with a fraudulent purpose." *Maurer v. International Union United Automobile, Aerospace and Agricultural Implement Workers of America,* 487 F.Supp. 731, 738 (M.D.Pa.1979) (applying Pa. law) (citations omitted). Moreover, "[t]here can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgment than the product of what defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which *must be such as the party claiming the estoppel had a right to rely on.* The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was *still obliged to inquire* for the existence of other facts and to rely on them also to sustain the course of action adopted, he *cannot* claim that the conduct of the other party was the *cause* of his action and no estoppel will arise . . . . [A] party may not properly claim that an estoppel arises in his favor from his own ommission or mistake." *Northwestern National Bank v. Commonwealth, supra* 345 Pa. at 197,

27 A.2d at 23 (emphasis supplied). *Accord Goodwin v. Hartford Life Insurance Company,* 491 F.2d 332, 334 (3rd Cir. 1974) (applying Pa. law); *American Kitchen Foods Incorporated v. Hersch Cold Storage Company,* 435 F.Supp. 1127, 1132–1133 (W.D.Pa.1977) on reconsideration 449 F.Supp. 34 (W.D.Pa.1978); *In Re Estate of Watt,* 409 Pa. 44, 65–66, 185 A.2d 781, 792 (1962); *Cerami v. Dignazio,* 283 Pa.Super. 424, 436–437, 424 A.2d 881, 888 (1980); *Livingston v. Livingston,* 275 Pa.Super. 285, 292, 418 A.2d 724, 728 (1980); *Cheltenham National Bank v. Snelling,* 230 Pa.Super. 498, 504, 326 A.2d 557, 560 (1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 453 (1975).

■ In the instant case, appellant had attached a copy of the contractor's performance bond to its initial complaint. That copy readily disclosed upon even cursory examination that appellee had not signed the bond and was not a principal surety but only a reinsurer. Appellant could not properly rely upon alleged conclusory averments of appellee's counsel when it had in its possession the written contract which disclosed that appellee was not a principal party. In this action, therefore, it cannot establish a "lack of knowledge and of the means of knowledge of the truth as to the facts in question." *Goodwin v. Hartford Life Insurance Company, supra* at 334, quoting *In Re Estate of Watt, supra* 409 Pa. at 65–66, 185 A.2d at 792. Finally and significantly, with the means available to determine the true facts and proceed accordingly, appellant is unable to show prejudice. The trial court correctly held that appellee was not estopped from asserting in preliminary objections its status as a reinsurer. That status was obvious from the documents attached to appellant's second amended complaint.

The judgment is affirmed.

JOHNSON, J., files a concurring opinion.

SPAETH, J., files a dissenting opinion.

JOHNSON, Judge, concurring:

I agree with Judge WIEAND in his conclusion that, on the facts of the instant case, the judgment should be affirmed. However, I cannot join in that part of his opinion which states that a reinsurer is in no respect liable to the original insured.

In the instant case, Appellant filed suit against, inter alia, International Fidelity Insurance Company (Fidelity), based on a public works contract. The record clearly indicates that despite Fidelity's erroneous averment, Fidelity was solely a reinsurer of the contract between Appellant and H. Rupert & Sons, Inc. and not a co-surety. I therefore agree with J. WIEAND'S opinion that (1) Fidelity was solely a reinsurer of the original contract, (2) Appellant's estoppel argument lacks merit and (3) the judgment should be affirmed, based on the facts of the case.

However, there are situations that I foresee where the original insured should be permitted to sue a reinsurer directly. An example would be where an agency relationship exists between the reinsured (the original insurer) and the reinsurer and the reinsurer has significant control over the actions of the original insurer. In such a case, the fact that the insurance company with control is labeled a "reinsurer" should not necessarily relieve it of liability on contractual actions arising out of certain conduct of the "reinsurer", e.g., bad faith.

The instant facts do not lead me to the conclusion that Fidelity had, for example, any agency relationship with H. Rupert & Sons, Inc., nor does Appellant allege any fact that would lead me to the conclusion that Appellant's suit should be permitted.

Therefore, although I agree with the result in the instant case, I cannot join that portion of Judge WIEAND'S opinion concerning the validity of the rule disallowing any action by an original insured against a reinsurer.

SPAETH, Judge, dissenting:

I am unable to subscribe to the majority's holding that appellant, the original insured, may not bring a cause of action against its reinsurer. The traditional rule barring such actions has been more often invoked than examined. The majority states that it can "perceive neither practical nor policy reason[s] for altering this rule," at 232, but I submit that there are such reasons, and that the rule should be reexamined and abandoned.

The traditional rule grew up in the 1800's, as the vintage of the authority cited by the majority indicates, when reinsurance and insolvency of insurance companies were not common. Today, reinsurance is common. One commentator considers it essential on major risks. Thompson, *Critical Issues of the Eighties: How Trends in Reinsurance Will Affect Legal, Legislative, and Regulatory Actions,* 26 Forum 1038, 1039 (1981) [hereinafter "Trends in Reinsurance"]. Insolvency of insurance companies is also, if not common, at least not rare, and the majority of states have enacted legislation designed to compensate insureds in the event of an insolvency. Shulman, *Reinsurance: A Primer for the Practitioner,* 3 L.A.Law. 34, 36 (1980). Thus the practical considerations in support of the traditional rule have changed.

The law has changed, too. The rationale of the traditional rule, relied on by the majority, is that there is no privity between the insured and the reinsurer. At 231. *See* 44 Am.Jur.2d, Insurance § 1877 (1969). But as appellant argues, the doctrine of privity has been "largely discredited." Appellant's Brief at 15.

A look at the doctrine of privity in products liability law is instructive. From the 1800's until about 1916, the doctrine was invoked to prevent persons injured by defective products from suing the manufacturer of the product. In *Mac-Pherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916), Justice CARDOZO, observing that "[p]recedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day," *supra* at 391, 111 N.E. at 1053,

held that a person injured as a result of a defective automobile tire had a right of action against the manufacturer of the tire, despite the lack of privity. The rationale was that the manufacturer expected that its product would be used in a certain manner, and was in a better position than the innocent consumer to know of the potential danger. This decision has been regarded as the impetus for changes in the law "responsive to ever-growing pressure for protection of the consumer coupled with a realization that liability would not unduly inhibit the enterprise of manufacturers and that they were well placed both to profit from its lessons and to distribute its burdens." James, *Products Liability,* 34 Tex.L. Rev. 44 (1955). *See* Keeton, Owen, Montgomery, *Products Liability and Safety,* 41–55 (1980).

Similar policy considerations argue against invoking the doctrine of privity here. First, the reinsurer's expectations are not disturbed if a suit by an original insured is brought directly against it, in the case of the intermediary's insolvency, because the reinsurer was presumably prepared to pay anyway. In fact, in exchange for its accepting its share of the risk, the reinsurer typically "receives from the ceding company [the intermediate insurance company] an agreed percentage of the premiums, or a negotiated amount, payable to the ceding company by the insured." Shulman, *Reinsurance: A Primer for the Practitioner,* 3 L.A.Law. 34 (1980). Second, like the product manufacturer, the reinsurer is often in a better position than the original insured to know the financial health of the insurance company, and, unlike the insured, can consider this in entering into the reinsurance agreement. Finally, the original insured may well go uncompensated in the event of insolvency of his insurance company if suit against the reinsurer is not permitted. Here, although the majority states that appellant "is protected by the bond, with sureties, which the contractor filed," at 232, it is not evident that that is so. If it were, why would appellant file this suit? In any case, the majority's argument proves too much: accept it, and *MacPherson* would have been decided the other way.

In this regard, it may be noted that the provisions of the Pennsylvania Insurance Guaranty Association Act, Act of Nov. 25, 1970, P.L. 716, N. 232, Art. 1, § 101, 40 P.S. § 1701.101 *et seq.* do not afford as direct a remedy for insureds as a suit against the reinsurer, given the Act's prerequisites to recovery. *See, Sands v. Pa. Ins. Guaranty Ass'n,* 283 Pa. Superior Ct. 217, 423 A.2d 1224 (1980). Moreover, why should the Association, to which all property and casualty carriers are required to belong, be compelled to deplete its funds to pay an insured, when a specific reinsurer has been receiving premiums indirectly from the insured, and when that reinsurer accepted the risk of entering into a reinsurance agreement with a financially unsound insurance company? Surely the reinsurer is the party that should in fairness absorb the risk, and the one that can most effectively prevent it from occurring.

In addition to the lack of privity, one other reason has been advanced for barring the insured from an action against the reinsurer. It has been said that "[t]he theory behind precluding the original insured party from suing the reinsured directly is that such a party usually has no knowledge of the reinsurance contract and cannot claim that it relied upon such a contract . . . ." *Housing Authority of Lebanon v. Envirohousing,* 442 F.Supp. 1193, 1196 (M.D.Pa. 1978). Here, however, appellant knew of the existence of the reinsurance agreement, for the agreement was attached to the contractor's bond. Thus, appellant reasonably expected that it was "doubly protected" by insurance company *and* reinsurer—it argued in fact that it thought the reinsurer was a co-surety—and yet the majority defeats that expectation by preventing appellant from asserting the reinsurer's obligation. In my view, we should uphold appellant's reasonable expectations. *See* Keeton, *Insurance Law* § 6.3(a) (1971) (discussing the importance of honoring the reasonable expectations of the insured). As one commentator explains,

> Despite the general principle of law that the policyholder has no right to seek payment directly from a reinsurer, it should be evident that reinsurance can be a mainstay

behind the original policy. The individual who purchases insurance is fortified by a virtual network of reinsurance companies. For example, an individual who purchases a $10 million policy may trigger the interrelationship of American and international capital; the insurance company may retain a small portion of the original policy it has written and pass on the balance to an American reinsurer or several American reinsurers who may choose to retain a part of that risk and, in turn, pass the remainder to markets throughout the world. Therefore, the original insured's security has become international. When this is multiplied by the many sets of reinsurance relationships, the economic life of the general public is strengthened and both trade and industry are enhanced.

Thompson, *Trends in Reinsurance, supra* at 1043.

I should reverse the order of the lower court.