CONSOLIDATED RAIL CORPORATION

v.

DELAWARE AND HUDSON RAILWAY COMPANY.

Civ. A. No. 82–5354.

United States District Court, E.D. Pennsylvania.

Aug. 8, 1983.

Laurence Z. Shiekman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff; Charles Bramhan, Gen. Counsel-Corporate, Philadelphia, Pa., of counsel.

William P. Quinn, Rubin, Quinn & Moss, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is a diversity action, brought pursuant to 28 U.S.C. § 1332. Plaintiff, Consolidated Rail Corporation (Conrail), has filed a motion for partial summary judgment in the amount of $4,450,533. (plus interest at 6% since December 31, 1982) against de-fendant Delaware and Hudson Railway Company (D & H). Conrail seeks summary judgment on the ground that D & H failed to make timely payments as required by a Settlement Agreement (Agreement) between the parties and that D & H failed to "cure" the breach within the thirty-day grace period set forth in the Agreement. For the reasons hereinafter set forth, Conrail's motion will be granted.

■ To be entitled to summary judgment, the moving party must demonstrate that there is no genuine issue of material fact. F.R.C.P. 56(c). Any reasonable inferences from the facts must be resolved in favor of the non-moving party. *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981). There appear to be no genuine issues of material fact in this case. The Court, after resolving all reasonable inferences in favor of D & H, has determined that the material facts as to which there are no genuine issues are as follows:

Conrail and D & H executed a written contract entitled "the Settlement Agreement" on September 8, 1980, as amended September 30, 1981, in which each party acknowledged liabilities to the other arising out of transactions between them as connecting railroads. The parties agreed that D & H owed Conrail certain sums of money, known as the June 30, 1979 Net Amount, the June 30, 1980 Net Amount, and Current Amounts. D & H agreed to make quarterly payments in accordance with the Agreement. D & H failed, however, to make the second and third quarterly payments for 1981 when due. The amount due for each of these two quarters exceeded $100,000. Section X.F of the Agreement provides:

Upon any breach by D & H of any of the provisions of this Agreement involving an amount in excess of $100,000, CONRAIL, at its option, may provide written notice of such breach to D & H and if D & H has failed to cure said breach within thirty (30) days of receipt of said notice, CONRAIL may declare the aggregate amount of the June 30, 1979 Net Amount, plus interest thereon, and the June 30, 1980 Net Amount, plus interest thereon,

as of the date of such breach immediately due and payable in full to CONRAIL.

By letter dated October 28, 1981 (October 28 notice), Conrail notified D & H that it was in breach of the Agreement by reason of D & H's failure to make the second and third quarterly payments for 1981. On November 13, 1981, Mr. Evanoff, Treasurer of D & H, telephoned Mr. Wadden, Vice President and Controller of Conrail. As shown by the Evanoff Affidavit, Mr. Wadden was "sympathetic but insisted that D & H comply with its obligations under the Settlement Agreement." He suggested that D & H formulate a plan for payment of the overdue liabilities and present the plan to Conrail for its consideration. By letter dated November 18, 1981 (November 18 tender), D & H tendered as payment for both of the overdue installments an offset of Conrail's liability to D & H for interline freight and car hire. By D & H's calculations, the amounts due to D & H by Conrail would exceed both of the quarterly installments due to Conrail. Based on D & H's calculations, the amount due for November 1981 was $214,000., an amount sufficient to cover the second quarterly payment owed by D & H to Conrail. In addition D & H proposed, "the interline freight and car hire payable in December 1981 should produce enough excess to cover the (third quarterly) installment of $217,696.17."

On December 8, 1981, several days after the expiration of the grace period, Conrail informed D & H that the November 18 tender was accepted as curing D & H's breach of the Agreement with respect to the second quarterly payment but that D & H's tender of a projected offset for the month of December was not acceptable as a "cure" for D & H's breach with regard to the third quarterly payment.

The amount which D & H owed Conrail thirty days after its receipt of the October 28 notice exceeded $100,000. Accordingly, Conrail exercised its right under § X.F of the Agreement and declared the 1979 and 1980 Net Amounts (plus interest) immediately due and payable in full. On December 22, 1981, D & H paid the third quarterly installment in cash. By letter dated January 11, 1982, Conrail acknowledged receipt of the payment and credited that amount against the accelerated total. However, Conrail in its letter specifically stated that: "[the December 22, 1981] payment by D & H ... does not cure the D & H default under the Settlement Agreement, and [the June 30, 1979 and June 30, 1980 Net Amounts plus interest], less amounts subsequently paid, remain immediately due and payable in full to Conrail." D & H made timely payment of all quarterly installments subsequently coming due under the Agreement. Conrail accepted D & H's payments throughout 1982 and 1983.

Furthermore, there is no genuine issue concerning the fact that in the event Conrail is entitled to partial summary judgment, the amount of that partial summary judgment is $4,450,533. plus interest at 6% from December 31, 1982.

■ The cure of a breach must remedy the breach. The breach in this case was D & H's failure to make the second and third quarterly payments for 1981. Cure of that breach required payment in full to Conrail of the amounts due for the second and third quarters or by Conrail accepting the offset of existing amounts presently due and owing to D & H by Conrail within the thirty-day grace period set forth in the Agreement. The November 18 tender failed to cure D & H's breach with respect to the amount due Conrail for the third quarter of 1981. Conrail declined to accept the offset tendered because that payment would not be due and owing until December 1981.

■ D & H contends that it was justified in anticipating from the November 13 phone conversation between Mr. Evanoff and Mr. Wadden that Conrail would entertain and respond to D & H's payment proposal before accelerating maturity of the entire debt under § X.F of the Agreement. D & H maintains that Conrail, by waiting until after the expiration of the cure period to reject its November 18 tender, effectively precluded D & H from curing its breach by alternative means within thirty days of

the October 28 notice and was therefore estopped from accelerating payment.

Under Pennsylvania law, which the parties agree is applicable:

> (a)n "estoppel arises when one by his acts, representations, or admissions, *or by his silence when he ought to speak out,* intentionally or through culpable negligence induces another to believe certain facts to exist and such other *rightfully relies and acts on such belief,* so that he will be prejudiced if the former is permitted to deny the existence of such facts."

*Schuylkill Products v. H. Rupert and Sons, Inc.,* 305 Pa.Super. 36, 451 A.2d 229, 233 (1982); *In Re Estate of Tallarico,* 425 Pa. 280, 286, 228 A.2d 736, 741 (1967), *quoting Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196, 27 A.2d 20, 23 (1942) (emphasis added).

> If notwithstanding such representation or conduct (the party claiming estoppel) was *still obliged to inquire* for the existence of other facts and to rely on them also to sustain the course of action adopted, he *cannot* claim that the conduct of the other party was the *cause* of his action and no estoppel will arise...

*Schuylkill,* 305 Pa.Super. 308, 451 A.2d at 233, *quoting Northwestern,* 345 Pa. at 196, 27 A.2d at 23.

According to the Affidavit of Mr. Evanoff, Treasurer of D & H, nothing was said in the telephone conversation with Mr. Wadden of Conrail on November 13, 1981 which induced D & H to believe that its letter of November 18, 1981 would be accepted as curing the breach. In his Affidavit Mr. Evanoff specifically states that Mr. Wadden was "sympathetic but insisted that D & H comply with its obligations under the Settlement Agreement." Furthermore, there is nothing in the Affidavit filed by D & H which in any way indicates they were without the means of ascertaining Conrail's response to their tender of a cure within the period set forth in the Agreement. In other words, the Affidavit filed by D & H in this matter creates no genuine issue of material fact which would support D & H's contention that there was an estoppel.

In his Affidavit Mr. Evanoff states however that had D & H been informed by Conrail prior to November 27 that the tender expressed in D & H's letter of November 18, 1981 was unacceptable with respect to its third quarter liability, D & H was in a position to pay the obligation from cash on hand. This Affidavit however does not state that Conrail was advised that D & H had the cash on hand and would pay the third quarter liability in the event it heard from Conrail prior to November 27, 1981. There is nothing in the Affidavit that shows that the telephone conversation or the letter could serve as a basis for an estoppel.

D & H also contends that Conrail, by accepting payment of the third quarter liability and subsequent quarterly payments throughout 1982 and 1983, waived its right to accelerate payment. The material facts concerning which there is no issue clearly show that there was no waiver of Conrail's right concerning the acceleration of the debt.

A waiver is the intentional relinquishment of a known right. *United States v. Curtis T. Bedwell & Sons, Inc.,* 506 F.Supp. 1324 (1981); *Brown v. City of Pittsburgh,* 409 Pa. 357, 360, 186 A.2d 399, 401 (1962). Conrail in its January 11th acceptance of the overdue third quarterly installment clearly expressed intent to retain its rights under § X.F of the Agreement. It has long been held in Pennsylvania that proof of (a party's) failure to rigorously enforce its (contractual) rights does not sustain the burden of establishing an implied waiver. *Sellersville Savings and Loan Association v. Kelly,* 29 B.R. 1016 (D.C.E.D.Pa.1983); *Nahas v. Nahas,* 175 Pa.Super. 188, 193, 103 A.2d 473, 475 (1954); *Steinman v. La Charty Hotels Co.,* 355 Pa. 444, 447–448, 50 A.2d 297, 298 (1947).

Furthermore, it is clear under Pennsylvania law that the doctrine of implied waiver "applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show *that he was misled and*

*prejudiced thereby.*" *Bedwell,* 506 F.Supp. at 1329, *quoting Brown,* 409 Pa. at 360–361, 186 A.2d at 401. D & H has not presented any Affidavit showing or suggesting that D & H was prejudiced by Conrail's acceptance of the third quarterly and subsequent payments. Such payments were due under the Agreement.

As this Court has heretofore pointed out, there is nothing in the record showing that the defendant D & H cured its breach of the Agreement with regard to the overdue third quarterly payment of 1981. Furthermore, there is nothing in this record showing that plaintiff Conrail was estopped by its conduct from accelerating payment or that it waived its right to do so. Accordingly, plaintiff's motion for partial summary judgment will be granted.