Elsie M. HEFFELFINGER, Petitioner,

v.

**DEPARTMENT OF PUBLIC
WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.

Decided Dec. 4, 2001.

Stanley M. Vasiliadis, Bethlehem, for petitioner.

Andrew A. Coates, Philadelphia, for respondent.

Before SMITH, J., FRIEDMAN, J., JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

■ Elsie M. Heffelfinger (Petitioner) petitions for review of the Secretary of the Department of Public Welfare's (DPW) January 12, 2001 final order that upheld the October 27, 1999 final administrative action order of the Director of the Bureau of Hearings and Appeals (Bureau). Specifically, DPW determined that, due to three consecutive monthly transfers of $9,000.00 each, Petitioner was ineligible for Medicaid funding to pay for her nursing home care for a five-month period. For the reasons that follow, we affirm.

On March 26, 1999, the Northampton County Assistance Office (CAO) received an application for Nursing Home Care Medical Assistance (MA–NHC) payments for Petitioner. It is undisputed that Petitioner made three transfers of $9,000.00 from her checking account to an irrevocable trust. The transfers occurred on September 15, 1998, October 5, 1998 and November 3, 1998.

The look-back date for the transfers is thirty-six months from the date on which the individual is both institutionalized and

has applied for MA.[1] 55 Pa.Code § 178.104(c). The CAO took the amount of the uncompensated value (UV) of the assets, $27,000.00, and divided it by the average monthly cost to a private patient of Nursing Facility Care (NFC) in effect in the Commonwealth at the time of the application, $4,589.88. 55 Pa.Code § 178.104(d). Based thereon, the CAO determined that the date of ineligibility was for the five-month period of September 1, 1998, the month of the first transfer, to January 31, 1999.[2] Accordingly, the CAO authorized MA–NHC effective February 1, 1999. Petitioner's timely appeal of that determination followed.

Subsequently, on July 28, 1999, the Bureau conducted a hearing where Michael Zegalia was the only witness to testify on behalf of the CAO. Essentially, he testified that he relied on 55 Pa.Code § 178.104(d) in making his determination of eligibility and that he did not rely upon any policy clarifications. The Hearing Officer upheld the CAO's determination and denied Petitioner's appeal. The Bureau Director affirmed the Hearing Officer's determination and, ultimately, the Secretary upheld the Director's October 27, 1999 final administrative action order. Petitioner's timely appeal to this Court ensued.

There are three issues before us for review: (1) whether DPW erred in refusing to treat each transfer as a separate event, with its own period of ineligibility, for purposes of determining MA–NHC; (2) whether DPW was required to follow the methodology for calculating periods of ineligibility set forth in the State Medicaid Manual; and (3) whether DPW was estopped from using a methodology different from that set forth in DPW Policy Clarification No. NC–6510–440. On review, we are limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Dempsey v. Department of Public Welfare*, 756 A.2d 90 (Pa.Cmwlth.2000).

Petitioner argues that when uncompensated transfers are made in such a way that the penalty periods do not overlap, each transfer should be treated as a separate event with its own period of ineligibility. Thus, as per Petitioner, there would be three consecutive one-month penalties which, when combined, would create only a three-month period of ineligibility: September 1–November 30, 1999.

In support of her argument, Petitioner asserts that, in establishing standards for financial and non-financial ineligibility for MA, DPW must take into account pertinent federal legislation and regulations. She notes that the regulation DPW cited in support of its calculation, the Pennsylvania Standard, is the same standard mandated under federal law, the Federal Standard. Further, she notes the use of the word "cumulative," as opposed to "aggregate," in each of the respective standards.[3] The two standards provide as follows:

**Pennsylvania Standard:**

The number of months of ineligibility for the institutionalized individual who disposes of assets for less than FMV

---

**1.** As DPW noted in its brief, transfers to a trust can increase a look-back period from thirty-six to sixty months. Due to the amount of the transfer in the present case, however, an increase in the look-back period was not imposed.

**2.** Although the period of ineligibility would technically be for 5.8 months, it was only for five months since DPW does not impose penalty periods for partial months.

**3.** As DPW points out, Petitioner does not elaborate on this point in her brief. Therefore, we decline to do so on her behalf.

shall be equal to the total cumulative UV of all assets transferred by the individual or the individual's spouse on or after the look-back date divided by the average monthly cost to the private patient of NFC in effect in the Commonwealth at the time of application.

55 Pa.Code § 178.104(d).

**Federal Standard:**

With respect to an institutionalized individual, the number of months of ineligibility under this subparagraph for an individual shall be equal to—

($l$) the total, cumulative uncompensated value of all assets transferred by the individual (or individual's spouse) on or after the look-back date specified in subparagraph (B)(i), divided by

(ll) the average monthly cost to a private patient of nursing facility services in the State (or, at the option of the State, in the community in which the individual is institutionalized) at the time of application.

42 U.S.C. § 1396p(c)(1)(E)(i).

In addition, Petitioner notes that the Health Care Financing Administration (HCFA), which oversees each state's Medicaid program, provides that "[t]he provisions explained in these instructions apply to all states." She further notes that, although the HCFA Transmittal No. 64 also provides that states may use other methodologies for determining penalty periods, provided they obtain HCFA approval, there is no evidence of record that DPW did so. Thus, she contends that compliance with the State Medicaid Manual is mandatory, not discretionary.

Petitioner points out that DPW Policy Clarification No. NC–4761–440, dated February 10, 1995, provides as follows regarding the proper method for calculating periods of ineligibility when transfers are made so that penalty periods do not overlap: "[W]hen multiple transfers are made in such a way that the penalty periods for each do not overlap, each transfer is treated as a separate event with its own penalty period." (Record at A–3.) Moreover, Petitioner notes that DPW Policy Clarification No. NC–6510–440, dated November 19, 1996, provides, in pertinent part, as follows:

[T]he HCFA State Medicaid Manual indicates that when the amount of the transfer is less than the monthly cost of nursing care, the state has the option of not imposing a penalty or imposing a penalty of less than a full month. Pennsylvania did not choose this option, and NCH 440.94 (issued 8/7/96) does not provide instructions for penalty periods of fractions of a month. A penalty is imposed for full months only.

(Record at A–2.)

Accordingly, Petitioner argues that applying the respective policy clarifications requires that each $9,000.00 transfer be treated separately, with its own period of ineligibility. As per Petitioner, this would result in three consecutive one-month penalties.

Finally, Petitioner argues that DPW should be estopped from using a methodology different from that set forth in the applicable policy clarifications for interpreting the regulation regarding imposition of periods of ineligibility for uncompensated transfers. She notes that DPW acknowledged that the policy clarification had not been replaced by a new one and that Petitioner's counsel relied on that clarification in calculating penalty periods. She contends that if DPW chooses to change its policy, then parties who reasonably rely upon the clarifications should be given appropriate notice. She maintains that the natural consequences of that reliance is her lack of resources to pay for the additional period of nursing home care re-

sulting from DPW's failure to follow its own published guidance.

In response, DPW contends that it properly calculated the period of ineligibility when Petitioner made multiple-asset transfers in consecutive months and the transferred amounts were all in excess of the average monthly cost to a private patient for nursing home care. Specifically, it maintains that the income maintenance caseworker supervisor correctly relied upon the Pennsylvania Standard in determining the period of ineligibility. It notes that the Pennsylvania Standard was properly codified and amended to reflect the changes that resulted from the Omnibus Budget and Reconciliation Act of 1993 (OBRA 93),[4] namely, the Federal Standard.

Further, DPW notes that both the Pennsylvania and Federal Standards provide that the amount at issue is the "total, cumulative uncompensated value of all assets transferred by the individual." It argues that, not only does its interpretation comply with both federal and state law, but it is also the only one that makes sense.

Specifically, DPW contends that an examination of the three transfers clearly establishes an overlay in the penalty periods. To illustrate, the $9,000.00 transfer made on September 15, 1998 resulted in a period of ineligibility of 1.96 months ($9000.00/$4,589.88=1.96). It points out that 42 U.S.C. § 1396p(c)(1)(D) provides that the period of ineligibility for MA NHC is "the first day of the first month

during or after which assets have been transferred for less than fair market value and which does not occur in any other periods of ineligibility under this subsection."[5] DPW interprets that to mean that no penalty period can begin while another penalty period is in effect. Thus, because of the overlapping penalty periods, DPW had to total the cumulative uncompensated value of all of the assets that were transferred.

DPW points out that Petitioner offers no support for her position that each transaction must be viewed separately and may not be added together. It notes that she offers no support to explain her position that "cumulative" is not synonymous with "aggregate."

In addition, DPW rejects Petitioner's contention that it must follow HCFA Transmittal No. 64 in determining periods of ineligibility, arguing that it is required to follow federal law. It points out that HCFA Transmittal No. 64, issued in 1994, is a guideline, not a regulation. It acknowledges that guidelines are tools used to assist individuals in obtaining information as to HCFA's interpretation of the United States Code, but notes that 55 Pa. Code sets forth the actual regulations that must be adhered to in determining MA eligibility.

As for the policy clarifications, DPW emphasizes that the hearing officer was beholden to make his adjudication in accordance with regulations established by DPW which have been promulgated in accordance with the Commonwealth Docu-

---

4. 42 U.S.C.S. § 1396p.

5. "Applying this standard to the $9,000.00 transfer that was made on September 15, 1998 results in a penalty period of all of September and .96 of the month of October. Since the $9,000.00 transfer that was made on October 5, 1998 *begins* on the first day of the month in which the transfer was made

(October 1, 1998), there is an overlap in the penalty period. The penalty period for the *October transfer cannot begin until the previ-ous penalty period has expired.* This same procedure would apply to the $9,000.00 transfer made on November 11, 1998." (DPW's Brief at 8.)

ments Law.[6] 55 Pa.Code § 275.4(h)(2)(i). Because a policy clarification is not a duly promulgated regulation, DPW argues that it may not form the basis for a decision.

Finally, DPW points out that estoppel can only be claimed by one who acted in ignorance of the true state of facts and who was without means of informing himself of their existence. *Livingston v. Livingston,* 275 Pa.Super. 285, 418 A.2d 724 (1980); *Divine Providence Hosp. v. Department of Public Welfare,* 76 Pa.Cmwlth. 188, 463 A.2d 118 (1983). It notes that a certified elder law attorney represented Petitioner and that the Pennsylvania Standard was in effect years before the transfers were made.

■ Having carefully considered both parties' arguments, we conclude that DPW did not err in determining that Petitioner was ineligible for Medicaid funding to pay for her nursing home care for a five-month period. As DPW posits, the Hearing Officer was bound to "make his adjudication in accordance with regulations established by the Department which have been promulgated in accordance with the Commonwealth Documents Law." 55 Pa.Code § 275.4(h)(2)(i). This is what was done in the present case.

Accordingly, we affirm the Secretary's order.

### *ORDER*

AND NOW, this 4th day of December, 2001, the Secretary of the Department of Public Welfare's January 12, 2001 final order is hereby affirmed.

---

**6.** Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602.